JON W. VERMOUTH, PETITIONER *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket No. 28158-85.      Filed June 17, 1987.

*Michael C. Cohen,* for the petitioner.
*Elaine Fuller* and *Steven M. Roth,* for the respondent.

## OPINION

NIMS, *Judge:* This matter is before the Court on respondent's motion to extend the time in which to file answer, petitioner's notice of objection and request for sanctions, and respondent's motion to file answer out of time. Pursuant to an order, an evidentiary hearing was held in Los Angeles, California, on January 28, 1987.

### Factual Background

A timely petition was filed on July 18, 1985, and was served on respondent on August 7, 1985. Petitioner resided in Dublin, California, at the time his petition was filed. On October 7, 1985, respondent moved to extend for 60 days the time within which to file an answer, to December 6, 1985, on the ground that the administrative file had not yet been received from which respondent could draft the affirmative allegations necessary under section 6653(b).[1] The

---

[1] Unless otherwise stated, all section references are to sections of the Internal Revenue Code in effect for all relevant periods. Except as otherwise noted, all Rule references are to the Tax Court Rules of Practice and Procedure.

motion stated that petitioner "does not object to this motion," and was therefore routinely granted by the Court.

On November 29, 1985, respondent again moved to extend the time within which to file an answer, requesting an additional 60 days, to February 6, 1986. In the second motion respondent again gave as his reason, his failure, "despite diligent attempts," to obtain the administrative file. Petitioner reacted to respondent's motion by filing, on December 2, 1985, a notice of objection and request for sanctions. Shortly thereafter, the Court held a nonevidentiary hearing on these matters, at which time respondent filed a motion to file his answer out of time, which motion the Court took under advisement. This was subsequently followed by petitioner's making an additional filing, this time, a motion for judicial notice and evidentiary hearing.

After the matter was fully briefed by both parties, an evidentiary hearing was held in Los Angeles on January 28, 1987. At the evidentiary hearing, the Court received documentary evidence and the testimony of the District Counsel, Los Angeles Office, Internal Revenue Service; Chief of Appeals, Los Angeles Appeals Office, Internal Revenue Service; and the trial attorney in charge of the case from the District Counsel's Office. From this hearing, the following facts can be adduced:

The deficiency notice (dated May 17, 1985) determines, among other things, an addition to tax for fraud under section 6653(b).[2] Respondent's answer was due October 7, 1985, and on October 1, 1985, respondent's counsel telephoned the Appeals Division's "Case Processing" (colloquially referred to as "Appeals Records" in the testimony) several times in an effort to obtain the administrative file, which he would need from which to extract sufficient facts to make affirmative allegations of fraud in his answer. According to a contemporaneous handwritten memorandum to his own file, respondent's counsel was told by Appeals Records that the case had not yet been carded in, and to "check back in the future." Having received this information from Appeals Records, respondent's counsel telephoned his adversary and requested a 60-day extension of time,

---

[2]Sec. 7454(a) and Rule 142(b) place the burden of proof on respondent as to the issue of fraud.

from October 7 to December 6, 1985. As above indicated, petitioner's counsel consented to this request.

There the matter languished for about 6 weeks until November 21, 2 weeks before the December 6 extended due date for the answer. At this point, respondent's counsel again telephoned Appeals Records to inquire as to the whereabouts of the administrative file. According to another contemporaneous memorandum to his own file, respondent's counsel told Appeals Records that he was concerned about the upcoming answer date. His memorandum states: "Still no word as to where admin file is." Respondent's counsel testified that he did not know what efforts, if any, were made within Appeals Records in response to his call. On November 25, he wrote a memorandum to the Chief of Appeals, Los Angeles District, bringing to his personal attention the impending December 6 due date and requesting that he, the Chief of Appeals, "Please make every effort to get the administrative file to us so we can make the affirmative allegations for fraud." At the evidentiary hearing, the head of Appeals could not recall having contemporaneously read the memorandum, stating that he believed it might have been sent directly to Appeals Records. In any event, the memorandum was unproductive.

In Los Angeles, during the period under consideration, the IRS District Counsel's Office adjoined the Appeals Division Office on the third floor of the Federal Building located at 300 North Los Angeles Street in downtown Los Angeles. Appeals Records was a floor or two below. Respondent's counsel testified that although Appeals has a formal requisition form for use by District Counsel personnel to obtain files, counsel has had more success in obtaining files by making telephonic requests. Furthermore, District Counsel lawyers are discouraged by the District Counsel and the Chief of Appeals from personally visiting Appeals Records in search of a file.

On November 29, 1985, respondent filed his second motion to extend the time for filing the answer, requesting an additional 60 days, to February 6, 1986. As above noted, petitioner did not consent to the granting of this second motion.

On January 2, 1986, thinking he might have to testify at a forthcoming hearing before the Court, a senior supervising attorney in the IRS Chief Counsel's National Office in Washington, D.C., telephoned the national head of the Appeals Division in a further effort to obtain the file. On the same day, following the telephone call, the Assistant Chief of Appeals, Los Angeles, hand-delivered the file to the Los Angeles District Counsel. Attached to the file was a completed IRS Form 2973 which revealed that the file had been received by Appeals in Los Angeles on October 29, 1985, a date substantially preceding the November 21 inquiry by respondent's counsel.

Both the Los Angeles District Counsel and the Chief of Appeals testified as to the very great volume of cases processed by their respective offices. The Los Angeles Office has the largest caseload in the system, but is not staffed proportionately. The District Counsel testified that his office processed approximately 6,000 Tax Court cases during the fiscal year encompassing the period under consideration.

This case is the responsibility of an attorney in the District Counsel's Office with approximately 6½ years of experience as a trial attorney. In the latter part of 1985, he was responsible for more than 300 Tax Court cases, plus certain miscellaneous matters, including cases dealing with refund litigation in the U.S. District Court.

The Court takes judicial notice of the fact that as of the end of the fiscal year 10/1/84 through 9/30/85, there were 72,836 cases pending in this Court.

## Discussion

Section 6213(a) provides that a petition to the Tax Court may be filed within 90 days, or 150 days if the notice is addressed to a person outside the United States, after the notice of deficiency is mailed. There is no statutory provision for relaxation of the time within which the petition may be filed. Rule 25(c). On the other hand, the time within which respondent must answer is covered by Court Rule. Rule 36(a) provides that "The Commissioner shall have 60 days from the date of service of the petition within which to file an answer." Since the time within which the answer is

to be filed is fixed by Court Rule, the Court, in its discretion, may relax the Rule and enlarge the time in appropriate circumstances. Rule 25(c). As to respondent's first request for an extension of time, this case presents a not unusual example of the relaxation of the 60-day due date on motion of respondent when the motion is uncontested.

As to respondent's motion for an additional 60 days, from December 6, 1985, to February 6, 1986, we think, on the facts presented, petitioner's notice of objection and motion to impose sanctions is well taken. If respondent's second motion had been granted, respondent would have had 180 days within which to file his answer, exactly double the time provided taxpayers by statute within which to respond to deficiency notices. Unquestionably, this case is symptomatic of problems created by the litigation explosion in this and other courts, but we think that, given the facts as herein recited, respondent's failure to proceed expeditiously in compliance with Rule 36(a) must be attributed primarily to bureaucratic inertia and not to conditions beyond respondent's control. As indicated by Rule 25(c), the Court does not apply its time Rules rigidly where fairness demands some relaxation of the Rule. See *Rea v. Commissioner*, 60 T.C. 717 (1973). On the other hand, the Court expects the parties to assist the Court in maintaining the integrity of its Rules by making reasonable efforts to comply with them.

No finger of guilt need perhaps be pointed at any one individual in this case, but compliance with the Rule was without question impeded by an overall lack of energy on the part of several individuals in assuring compliance. Respondent's counsel, after gaining the first extension, waited 5 or 6 weeks—perilously close to the expiration of the extended period—before making any follow-up effort to establish the whereabouts of the required administrative file. After receiving a vague response to an inquiry made to Appeals Records, he did direct a personal memorandum to the Chief of Appeals, drawing his attention to the required file and the imminent answer date. This memorandum apparently was simply ignored.

But rather than pursue the matter, counsel merely filed another motion seeking another 60-day extension. This action prompted petitioner's notice of objection, pursuant to which the Court scheduled a hearing, which in turn precipitated the immediate production of the file. But it took a Court order and a telephone call from IRS headquarters in Washington to accomplish this. As it developed, the file had been languishing in the Appeals Division in Los Angeles for more than a month before the expiration of the 60-day extension granted by the Court.

Respondent is a party to every case pending in this Court, which as of September 30, 1985, numbered 72,836 cases. Particularly in light of the number of cases, the IRS Office of Chief Counsel overall does a commendable job of handling the flow of litigation. Nevertheless, it is our duty to apply our Rules evenhandedly. Rule 123(a) provides:

When any party has failed to plead or otherwise proceed as provided by these Rules or as required by the Court, he may be held in default by the Court either on motion of another party or on the initiative of the Court. Thereafter, the Court may enter a decision against the defaulting party, upon such terms and conditions as the Court may deem proper, or may impose such sanctions (see, e.g., Rule 104) as the Court may deem appropriate. The Court may, in its discretion, conduct hearings to ascertain whether a default has been committed, to determine the decision to be entered or the sanctions to be imposed, or to ascertain the truth of any matter.

## Rule 104(c) provides:

(c) Sanctions: If a party or an officer, director, or managing agent of a party or a person designated in accordance with Rule 74(b), 75(c), or 81(c) fails to obey an order made by the Court with respect to the provisions of Rule 71, 72, 73, 74, 75, 81, 82, 83, 84, or 90, the Court may make such orders as to the failure as are just, and among others the following:

(1) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the case in accordance with the claim of the party obtaining the order.

(2) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence.

(3) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the case or any part thereof, or rendering a judgment by default against the disobedient party.

(4) In lieu of the foregoing orders or in addition thereto, the Court may treat as a contempt of the Court the failure to obey any such order, and the Court may also require the party failing to obey the order or counsel advising him, or both, to pay the reasonable expenses, including counsel's fees, caused by the failure, unless the Court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Rule 104(c) is adopted from rule 37(b)(2), Federal Rules of Civil Procedure (hereinafter F.R.C.P.). Note to accompany Rule 104(c), 60 T.C. 1124.

While the foregoing sanctions are directly applicable in matters relating to discovery, they are incorporated by reference, where appropriate, into Rule 123(a). It has been held by one Circuit Court that Rule 123(a) will be applied against the Commissioner upon a finding that the Commissioner violated one of the Tax Court's Rules. *Kumpf v. Commissioner*, 682 F.2d 67, 69 (3d Cir. 1982), remanding for further proceedings an unreported order of this Court.

Petitioner has drawn our attention to the case of *United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365 (9th Cir. 1980), which, although not a tax case, furnishes insight into the availability of sanctions against the Government under F.R.C.P. 37(b). In *Sumitomo Marine*, the Circuit Court held that: (1) An order precluding the Government from introducing any evidence on an issue of damages, which was imposed only after 18 months of delays and failure to comply with court-ordered discovery, did not constitute an abuse of discretion by the District Court; and (2) imposition of a $500 sanction personally against the Government's attorney for failure to comply with court-ordered discovery likewise did not constitute an abuse of discretion.

The litigation arose from a collision at sea between a Government vessel and a privately owned vessel. The Government as plaintiff sued for $1.7 million in damages, and the defendant counterclaimed for damages. Despite repeated directions to do so, the Government and its counsel continuously failed to furnish the defendant with a detailed statement of damages, leading eventually to the imposition of the sanctions referred to above.

It will be observed that there is a parallel between the Government's posture as claimant for damages, as in

*Sumitomo Marine*, and respondent's claim here for the fraud addition. In both instances, the Government as claimant has the burden of proof. Sec. 7454(a); Rule 142(b). In terms of the types of sanctions available to a court in enforcing its rules and orders, this is significant.

In discussing the *Sumitomo Marine* preclusion order, the Ninth Circuit notes that F.R.C.P. 37(b) (compare Rule 104(c)) provides a wide range of sanctions. The rule 37(b) sanctions are included in Rule 104(c), although restated and in a different order. *Sumitomo Marine* states that in ascending order of harshness, the trial court may:

(1) Require the delinquent party or his attorney to pay the reasonable expenses, including attorney's fees, incurred by the innocent party;

(2) Strike out portions of pleadings;

(3) Deem certain facts as established for purposes of the action or preclude admission of evidence on designated matters;

(4) Dismiss all or part of the action; or

(5) Render a default judgment against the offending party.

As pointed out in *Sumitomo Marine*, the Second Circuit, in *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979), has identified three general purposes served by rule 37(b) sanctions, the third of which is particularly pertinent here. These are:

(1) Preclusion orders ensure that a party will not be able to profit from its own failure to comply;

(2) Rule 37(b) strictures are specific deterrents and, like civil contempt, seek to secure compliance with a court order (or a court rule); and

(3) Although the most drastic sanctions may not be imposed as mere penalties, courts are free to consider the general deterrent effect their orders may have on the instant case and on other litigation, provided that the party on whom they are imposed is, in some sense, at fault. *United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d at 1369.

Petitioner states that he has suffered prejudice by delay for at least two reasons. First, in a case such as this where

respondent is basing a contention that petitioner fraudulently failed to report all of his income on an indirect method of proof, petitioner cannot begin to prepare his case until respondent has made the affirmative allegations necessary to disclose to petitioner what the basis for respondent's case is. Any delay at all in revealing this information to petitioner could make it more difficult for petitioner to obtain the necessary records and information to prove his case. Many third-party witnesses, such as banks, for example, routinely destroy records after a certain amount of time. Second, prejudice results from the fact that any delay by respondent in answering the case results in a corresponding delay in the beginning of settlement discussions. To the extent that a final resolution of the case is delayed, petitioner could incur substantial additional liability for interest.

We think petitioner's complaint has substantial merit, although it must be recognized that the positions of both parties can be prejudiced by undue delay: memories fade, documents are lost, etc. Nevertheless, to the extent petitioner here has been prejudiced by delay, our preclusion order will insure that respondent will not be able to profit from his own failure to comply with the Rule.

Also significant, however, is the expected salutary effect which a preclusion order would be expected to have in that respondent's Los Angeles Office will be expected to make reasonable efforts to timely comply with the time strictures of Rule 36(a) in future litigation.

The Circuit Court in *Sumitomo Marine* points out that a trial court's use of sanctions is "tempered by the requirements of due process. * * * Thus, neither dismissal nor preclusion of evidence that is tantamount to dismissal may be imposed when the failure to comply with discovery orders is due to circumstances beyond the disobedient party's control." 617 F.2d at 1369. We think the same rationale applies to sanctions imposed for a disregard of a court rule. Here, as in *Sumitomo Marine*, the Government's failure to do what was required of it may have been to some extent the result of serious understaffing. Nevertheless, petitioner has been prejudiced and some action is necessary to deter respondent's disregard of the Court's Rule requir-

ing timely answers to petitions. As stated by the Ninth Circuit in *Sumitomo Marine*, the effectiveness and need for harsh measures are particularly evident when the disobedient party is the Government. The public interest requires that Government agencies which are charged with the enforcement of laws should set the examples of compliance. 617 F.2d at 1370.

In *Sumitomo Marine*, the Circuit Court also held not to be an abuse of discretion the trial judge's imposition of a $500 sanction imposed personally on the Government's counsel. This sanction was apparently intended primarily as a warning to Government counsel and as an indication that further disregard of court orders would not be tolerated. 617 F.2d at 1371. The Court noted that F.R.C.P. 37(b) sanctions may be assessed against the attorney for the disobedient party. Since F.R.C.P. 37(f) (since repealed, Pub. L. 96-481, tit. II, sec. 205(a), Oct. 21, 1980, 94 Stat. 2330) at that time prevented the assessment against the United States of fees and expenses not authorized by statute, the District Court's only available target for such sanctions was, as noted by the Circuit Court, the Government's counsel. 617 F.2d at 1371.

We think the appropriate sanction in the case before us is a preclusion order in which the Government's January 21, 1986, motion to file answer out of time will be granted, but pursuant to which all allegations in support of the addition to tax for fraud will be stricken out. Furthermore, respondent will not be permitted to introduce evidence in support of the deficiency notice's fraud determination.

To the extent it may be applicable to proceedings in this Court, F.R.C.P. 55(e) (hereinafter rule 55(e)) by its terms does not defeat the preclusion order to be entered in this case under Rule 123(a).[3] Rule 55(e) provides:

(e) Judgment Against the United States. No judgment by default shall be entered against the United States or any officer or agency thereof

---

[3]There is no Tax Court counterpart to F.R.C.P. 55(e). However, Rule 1(a) permits reference to the Federal Rules in appropriate circumstances. In *Kumpf v. Commissioner*, 682 F.2d 67, 71-72 (3d Cir. 1982), remanding for further proceedings an unreported order of this Court, the Circuit Court noted that Rule 1(a) permits reference to the Federal Rules, as stated, but suggested that when Rule 123 is applicable, it may be that reference to F.R.C.P. 55(e) is precluded.

unless the claimant establishes his claim or right to relief by evidence satisfactory to the court.

Insofar as the addition to tax for fraud under section 6653(b) is concerned, the Government, not the taxpayer, is the claimant. It would be an impermissible shifting of the burden of proof to petitioner on this issue to hold otherwise. Sec. 7454(a); Rule 142(b).

The addition to tax for fraud is a civil sanction provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud. *Helvering v. Mitchell*, 303 U.S. 391, 401 (1938); *Rowlee v. Commissioner*, 80 T.C. 1111, 1123-1124 (1983). In the event respondent might have proven fraud in this case, it is unfortunate that taxpayers generally must bear the burden of respondent's failure to comply with the Court's Rules. However, since petitioner has waived a statute of limitations issue raised in the petition (the raising of which has been explained to the Court's satisfaction within the intendment of Rule 33(b)), the burden of proof as to the tax deficiency remains with petitioner. Rule 142(a). Petitioner is, in effect, the claimant as to the tax deficiency in this part of the case. Based on the facts in this proceeding, the Court does not propose to default the Government as to the income tax deficiency.

There is substantial authority in this Court and the appellate courts for precluding respondent from the affirmative pleading of fraud in appropriate situations. For example, in *Estate of Quirk v. Commissioner*, 60 T.C. 520 (1973), the Court denied respondent's untimely motion for leave to file an answer out of time where the reasons given for the delay were that respondent did not have access to his files because they were being shuffled between offices. In a supplemental opinion and order, we declined to deem admitted the facts alleged in the petition relating to the tax deficiency on the ground that petitioner was unable to demonstrate that he suffered substantial prejudice or hardship because of the unjustified 13-day delay in filing the answer, so the taxpayer was required to make a prima facie case on this issue. However, we noted that we were effectively preventing respondent from bringing into issue

any affirmative allegations, including the addition to tax for fraud under section 6653(b). *Estate of Quirk v. Commissioner*, 61 T.C. 95 (1973); Rule 142(b); see *Estate of Quirk v. Commissioner*, 521 F.2d 723 (9th Cir. 1975), affg. per curiam taxpayer's petition for writ of mandamus brought in the District Court.

A more far-reaching result obtained in *Commissioner v. Licavoli*, 252 F.2d 268 (6th Cir. 1958). This case was an appeal by the Commissioner to review an order of this Court which in practical effect struck the Commissioner's answer because of his persistent failure or refusal to comply with a series of the Court's orders to file an amended answer making a more complete statement of his defense. Under the facts of the case, the Circuit Court held that the Judge of the Tax Court had stated reasons for his ruling which prevented it from being classified as arbitrary or capricious. 252 F.2d at 273. The decision was accordingly affirmed.

Respondent argues that the most important considerations as to whether sanctions should be imposed are whether the failure to comply was willful, whether prejudice was suffered by the non-defaulting party as a result of the default, and whether the defaulting party acted promptly after discovering the default. Respondent cites *Fox v. Commissioner*, 718 F.2d 251 (7th Cir. 1983), affg. an unreported order of this Court; *Dixon v. Commissioner*, 60 T.C. 802 (1973); *Dusha v. Commissioner*, 82 T.C. 592, 605 (1984). We think respondent misconstrues the thrust of these cases. As to willfulness, the test is not whether the defaulting party deliberately perpetuated the default, but rather whether by some reasonable diligence on his part the default could have been avoided. See *Rea v. Commissioner*, 60 T.C. 717 (1973) (leave to file answer out of time granted where amended petition was inadvertently misfiled). We have here found that respondent was deficient in exercising such diligence. Furthermore, *Fox v. Commissioner*, cited by respondent, held that the trial court is required to find willfulness and bad faith only where the "extreme penalty" of dismissal is imposed, which is not the sanction imposed here. 718 F.2d at 254. See also *Dusha v. Commissioner*,

*supra*.[4] We do not agree with the implication of respondent's assertion that a negligent (rather than willful) failure to comply *may* justify *light* sanctions, citing the Advisory Committee Notes to F.R.C.P. 37(d) (relating to sanctions for failure to attend depositions, etc.) when, in fact, the Note itself states that "even a negligent failure should come within [the sanctions contained in] Rule 37(d)." Notes of Advisory Committee on Rules, 1970 Amendment to F.R.C.P. 37, 13 Fed. R. Serv. 2d 1xi (Callighan). *American Police & Fire Foundation v. Commissioner*, 81 T.C. 699 (1983), cited by respondent, involved loss of documents by the Post Office, not casual indifference to time strictures in the Court's Rules, as here.

In sum, we hold that the imposition of a sanction under Rules 123(a) and 104(c), in the form of a preclusion order of the type discussed, is appropriate in this case for the reasons stated.

To reflect the foregoing,

*An appropriate order will be entered.*

---

[4]In *Dusha v. Commissioner*, 82 T.C. 592 (1984), we noted our disagreement with certain aspects of the basis for the holding in *Fox v. Commissioner*, 718 F.2d 251 (7th Cir. 1983).

