EDWARD A. LEWIS AND DOROTHY LEWIS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 29067-81.       Filed May 19, 1988.

*Bruce I. Hochman, Martin N. Gelfand,* and *Dennis L. Perez,* for the petitioners.

*Ross W. Paulson,* for the respondent.

### OPINION

COHEN, *Judge:* In a statutory notice sent September 15, 1981, respondent determined a deficiency of $140,219.56 in petitioners' Federal income taxes for 1977 and an addition to tax of $7,010.98 under section 6653(a), I.R.C. 1954.[1] Respondent has moved for entry of a decision that there is an agreed deficiency of $82,762.84, and no addition to tax, due from petitioners. Petitioners oppose that motion and request that they be allowed additional time to raise and litigate a claimed net operating loss carryback from 1978 as an offset to their liability for 1977.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect during the year in issue.

The petition, filed November 30, 1981, alleged error in disallowing petitioners' distributive share of loss from Custom Tape Selections, a subchapter S corporation, and in determining the addition to tax. In an answer filed January 18, 1982, respondent alleged, as new matter, that petitioners' small business corporation failed to make a valid election under section 1372. In a reply filed February 1, 1982, petitioners denied the affirmative allegations of the answer.

By notice served April 17, 1985, the case was set for trial on September 9, 1985, along with more than 50 related cases, commonly referred to as the "Selectune" group of cases. When the Selectune cases were called from the calendar on September 9, 1985, the parties reported a proposal for disposition of the cases and ongoing settlement negotiations. The cases were then continued generally.

By notice served August 12, 1986, this case and certain of the related cases were set for trial on January 12, 1987. A stipulation for decision was executed by petitioners on or about October 13, 1986, and by respondent on or about December 29, 1986. The stipulation for decision was submitted to the Court, and a decision was entered January 7, 1987, determining a deficiency of $82,762.84 in petitioners' Federal income taxes for 1977 and no addition to tax.

On February 9, 1987, petitioners filed a motion to vacate decision, alleging in part as follows:

2. Respondent prepared settlement documents in accordance with the settlement agreed to in this case and mailed copies to petitioners and to petitioners' counsel on or about May 8, 1986.

3. On or about October 9, 1986, petitioners' counsel sent a duplicate set of settlement documents to petitioners, requesting that they sign and return them to petitioners' counsel's office.

4. On or about December 3, 1986, petitioners' counsel was made aware, through petitioners' C.P.A., of petitioners' disagreement with respondent's settlement computations due to a net operating loss carryback from 1978 which issue had not been previously raised.

5. On or about December 20, 1986, petitioners' counsel was made aware, through petitioners' C.P.A., that respondent had received settlement documents (directly from the petitioner) with respect to this case signed by both petitioners, including Decision documents. Petitioners' counsel was further advised by petitioners and their C.P.A. that respondent had agreed to withhold filing the Decision document with the

Court until petitioners determined whether they would raise the net operating loss issue in this case.

\* \* \* \* \* \* \*

9. Petitioners sustained a net operating loss in 1978 which resulted in a substantial net operating loss carryover.

10. Petitioners carried the entire 1978 net operating loss carryover forward but failed to make an irrevocable election to relinquish the entire carryback as required by I.R.C. sec. 172(b)(3)(E).

\* \* \* \* \* \* \*

13. Respondent's counsel has no objection to this motion.

By order dated March 4, 1987, petitioners' motion was granted.

By notice served July 14, 1987, the case was set for trial on December 14, 1987. A standing pre-trial order served with the notice of trial ordered, among other things:

Continuances, even on joint motion, will be granted only in exceptional circumstances. (See Rule 134, Tax Court Rules of Practice and Procedure.) It is further

\* \* \* \* \* \* \*

ORDERED that unless a basis of settlement has been reached, the parties shall submit a Joint Case Status Report directly to the undersigned forty-five (45) days before the call of the calendar. Where a basis of settlement has been reached, stipulated decisions shall be submitted to the Court prior to calendar call. Continuances to permit filing of settlement documents will be granted only where it is clear that settlement has been approved by both parties, and the parties shall be prepared to state for the record the basis of settlement and the reasons for delay in filing documents. Jurisdiction will be retained in such cases. It is further

ORDERED that unless a basis of settlement has been reached, each party shall prepare a Trial Memorandum and submit it directly to the undersigned and to the opposing party no later than fifteen (15) days before the first day of the trial calendar. It is further

\* \* \* \* \* \* \*

ORDERED: \* \* \* If any unexcused failure to comply with this Order adversely affects the timing or conduct of the trial, the Court may impose appropriate sanctions, including dismissal, to prevent prejudice to the other party or imposition on the Court. \* \* \*

The parties did not comply with the standing pre-trial order. Less than a week prior to the date set for trial, petitioners' counsel initiated a conference call with the Court and advised the Court that petitioners intended to

file a motion to amend the petition to claim the net operating loss carryback. On December 11, 1987, petitioners filed with the Court a motion for continuance, alleging, among other things:

7. During the period from December 29, 1986 to January 9, 1987, the parties engaged in discussions relating to Petitioners' claim of the net operating loss carryback from 1978. In these discussions, Petitioners' counsel informed Respondent's counsel of Petitioners' intention to file a motion to vacate the decision previously filed by Respondent. The basis of this motion to vacate was to allow Petitioners to raise the net operating loss issue and give the parties sufficient time to discuss and resolve all issues raised by the carryback computation.

\* \* \* \* \* \* \*

9. On or around January 12, 1987, Petitioners provided Respondent's counsel copies of Petitioners' 1975 through 1985 Federal income tax returns and informed Respondent that Petitioners' accountants were in the process of computing the net operating loss carryback to 1977. On this date, the parties also agreed to further discuss the issue after Respondent had an opportunity to review the Petitioners' tax returns and after Petitioners' accountants completed the carryback computations.

\* \* \* \* \* \* \*

11. There were no communications between Petitioners' counsel and Respondent's counsel concerning the instant case during the period from February, 1987 to early October, 1987.

12. On or around October 9, 1987, the parties discussed the net operating loss issue. Respondent's counsel was informed that the net operating loss computations were being prepared by Petitioners' accountants and would be immediately provided to Respondent upon completion. Respondent's counsel did not inform Petitioners' counsel in this discussion that Respondent would object to the carryback of the 1978 net operating loss.

13. On or around November 19, 1987, Petitioners' counsel contacted Respondent's counsel concerning the instant case. At this time, Respondent's counsel informed Petitioners' counsel that Respondent may take the position that the Petitioners are precluded from carrying back the 1978 net operating loss to the 1977 tax year, because the Petitioners had made a *"de facto election"* which was irrevocable.

\* \* \* \* \* \* \*

17. The Petitioners, having discovered the misunderstanding which has prevented the parties from arriving at a final resolution of this case, now seeks a continuance for purposes of formally raising the 1978 net operating loss carryback issue for resolution by the parties or a decision of this Court.

18. Petitioners received the carryback computations on December 7, 1987 and are now prepared to take steps to raise the loss carryback issue and resolve it through settlement or litigation.

19. Respondent's counsel was notified of this motion on December 8, 1987 and he objects to the granting of it.

20. Petitioners request that this motion be heard at the December 14, 1987 Tax Court calendar call in Pasadena, California.

Petitioners have not, through the time of this opinion, filed a motion to amend the petition.

The case was called for trial on December 14, 1987, at which time respondent filed a motion for entry of decision. The Court denied petitioners' motion for continuance and directed the parties to attempt to resolve their differences, setting the case for recall on December 22, 1987. The parties were unable to reach agreement and, on December 22, 1987, filed a joint stipulation of facts concerning the history of this case. The parties' stipulation included the following paragraphs:

11. In early December, 1986, Petitioners notified Respondent's Appeals Office that Petitioners were looking into whether they could carry back a 1978 net operating loss to offset their deficiency from the settlement of the Selectune issue in 1977.

12. The Appeals Office afforded Petitioners one week to decide whether Petitioners would assert the carryback issue. Petitioners did not respond and the Decision documents were sent to Respondent's counsel for filing.

13. On December 29, 1986, Respondent's counsel executed the Decision previously signed by Petitioners, and forwarded the Decision to the Court. The Court entered the Decision on January 7, 1987. * * *

14. On or about January 12, 1987, Petitioners' counsel discussed with Respondent's counsel the vacating of the Decision to allow the parties to address the side issue involving Petitioners' intention to carry back a net operating loss from 1978 to the 1977 year. Respondent's counsel stated that Respondent had no objection to Petitioners' Motion to Vacate, since there appeared to be some confusion between the Petitioners and the Respondent's Appeals Office concerning the previous filing of the decision. Respondent's counsel further stated that he was not sure whether Petitioners could, as a matter of law, carry back the 1978 loss after carrying it forward to 1979. Respondent's counsel at that time, also expressed concern as to whether the claimed losses were allowable, even assuming that a carryback could be made at that late date. In connection with this conversation, Petitioners' counsel believed that Respondent was on notice with regard to the carry back of the 1978 loss and that no amendment to the Petition was needed. Respondent's counsel believed that Petitioners would amend their petition after the Decision was vacated.

15. Also, on January 12, 1987, Petitioners' counsel provided Respondent's counsel copies of Petitioners' 1975 through 1978 Federal income tax returns and partial copies of Petitioners' 1979 through 1985 Federal tax returns. Petitioners also informed Respondent that Petitioners' accountants were in the process of preparing the net operating loss carryback computations relating to Petitioners' 1977 year.

\* \* \* \* \* \* \*

18. In July, 1987, Respondent's counsel requested the tax returns with administrative files for Petitioners' 1975, 1976 and 1978 tax years. Respondent's counsel obtained the 1978 tax return and file, but was informed that the Petitioners' 1975 and 1976 tax returns had been destroyed.

19. The parties did not discuss the carryback issue during the period from January, 1987 to November, 1987.

20. On or about November 19, 1987, Respondent's counsel informed Petitioners' counsel that the Government may take the position that Petitioners are precluded from carrying back the 1978 net operating loss to the 1977 tax year, because the Petitioners had elected to carry forward their claimed 1978 loss and that such election was irrevocable.

The Court ordered briefs on the issue of whether respondent's motion for entry of decision should be granted.

Petitioners argue that respondent has had fair notice of their claim to a net operating loss carryback and that they would be prejudiced if they were not allowed to raise that issue. They do not explain their failure to move to amend the petition and they totally ignore any obligation to the Court to prepare cases for trial, to comply with the Court's orders, or to raise issues in accordance with the Court's rules. Their position is summarized as follows:

This Court should also consider the parties' overall relationship in determining whether Respondent received fair notice of the loss carryback issue. Petitioners' counsel has represented some 5,000 Tax Court cases against the Internal Revenue Service, primarily the Los Angeles, California Appeals and District Counsel offices of the Internal Revenue Service. These cases involve tax shelter cases such as Petitioners' instant case and other types of cases. In the normal course of factual development, settlement discussions, and trial preparation, Petitioners' counsel and Respondent's Los Angeles office have handled matters in a general spirit of cooperation and efficiency. This has materially conserved the time of the parties and of this Court.

The instant case is not unlike many of the other thousands of cases the parties have resolved and in reliance upon prior dealings in these other cases and upon Petitioners' and their counsel's efforts to inform Respondent and provide him information, Petitioners' counsel believed that Respondent had received fair notice of the loss carryback issue and

that the case would be resolved in the normal course. In the context of the parties' working relationship, Petitioners' counsel's belief was reasonable and is persuasive in the determination of whether fair notice was given to Respondent.

Respondent contends that the net operating loss issue has not been properly placed before the Court and that it is too late for petitioners to amend the petition at this time. Respondent points out that petitioners have already received the benefit of the claimed 1978 loss by their election to carry forward that loss to 1979 and succeeding taxable years. He asserts that:

Respondent would be required, if petitioners are allowed to raise the issue, to audit and adjust petitioners' 1975, 1978, 1979, 1980, 1981, 1983, 1984, and 1985 returns, and perhaps several more, including returns going back to 1962 for capital loss carrybacks and petitioners' 1986 and 1987 returns. * * *

Respondent further points out that petitioners' liability for 1976 is currently the subject of a separate Tax Court proceeding, and the amount of loss available in 1977 cannot be determined until a final decision is reached for 1976.[2] Respondent asserts that the election to carry forward the loss to years after 1978 was irrevocable, citing section 172(b)(3)(C).

Neither respondent nor petitioners offer any excuse for the inactivity in this case from February through October 1987 or for their failure to comply with the standing pre-trial order served July 14, 1987.

In December 1987, this case had been pending for more than 6 years and involved petitioners' tax liability for 10 years earlier. Allowing petitioners to raise the now disputed issue would require reexamining their liability under facts that occurred as early as 1975 and would require adjusting

---

[2] Petitioners' liability for 1976 depends on final determination of the so-called London Options issue, tried and decided in *Glass v. Commissioner,* 87 T.C. 1087 (1987), currently on appeal.

Respondent objects to the relevance of petitioners' stipulated income tax returns for 1975, 1976, 1978, 1979, 1980, 1981, 1983, 1984, and 1985. Respondent's objection is overruled. The pattern of carryforward of the claimed 1978 loss is relevant to respondent's theory, as well as to petitioners'. The returns, however, are not, of course, received as proof of petitioners' actual tax liability for any of those years.

Petitioners contend that they would have an unused net operating loss from 1978 to 1977 even after carrying the total back to 1975 and 1976. Petitioners' computation has not been agreed to by respondent and cannot be verified without trial.

several years subsequent to 1978 in which they have already claimed the benefits of a loss carried forward from 1978. Moreover, at the time the petition was filed in 1981, petitioners were aware of the facts concerning their net operating loss for 1978 and the dispute as to their liability for 1976. (The notice of deficiency for 1976 was sent June 13, 1980, and the petition for that year, docket No. 17147-80, was filed September 9, 1980.)

Each of the versions of the chronology recited above compels the conclusion that petitioners should not be entitled at this late date to reopen the case to allege a new issue that would delay for several more years final disposition of their tax liability for 1977, the year in issue, and for earlier and later years. In another context in *Brooks v. Commissioner*, 82 T.C. 413, 429-430 (1984), affd. without published opinion 772 F.2d 910 (9th Cir. 1985), we have commented:

The imposition on the Court is also a matter to be considered. Our well-publicized case load is attributable not merely to protesters and tax shelters, but also to parties in other types of cases who depend upon obfuscation and delay to postpone or discount their liabilities. The Office of the Court is in Washington, D. C., but trial sessions are held in various cities, including Los Angeles, for the convenience of the parties. Secs. 7445, 7446; Rules 10, 140 [Tax Court Rules of Practice and Procedure]. When cases are at issue, they are scheduled on the next available calendar in the place requested for trial, generally in order of filing, and notice of trial is sent. See Rule 132. The judge, trial clerk, and reporter are assigned, and the courtroom space is reserved. When a case set for trial is not resolved during a trial session in which time has been set aside for it, a substantial waste of the Court's resources results. [Fn. ref. omitted.]

Delays also affect other taxpayers who are awaiting the opportunity to have their cases heard. Only a certain number of cases can be placed on any particular trial calendar. [Fn. ref. omitted.] Each time that a case scheduled for trial does not proceed, time is wasted that could have been spent on other cases if they could have been scheduled. Respondent's counsel is required to spend time preparing cases for trial which could be spent working with taxpayers on other cases and attempting to settle them. These unnecessary burdens on the system are unreasonable and unfair from the standpoint of everyone involved. See *Montgomery v. Commissioner, supra* [367 F.2d 917 (9th Cir. 1966)]; see also *Hatfield v. Commissioner,* 68 T.C. 895, 899 (1977).[6]

[6]These factors show the importance of compliance with Rule 134, dealing with continuances, which states in part:

"A motion for continuance, filed 30 days or less prior to the date to which it is directed, may be set for hearing on that date, but ordinarily will be deemed dilatory and will be denied unless the ground therefor arose during that period or there was good reason for not making the motion sooner."

The calendar for the December 14, 1987, Los Angeles (Pasadena) session included more than 300 cases, only 6 of which were older than petitioners' case.[3] When the case was called for trial on December 14 and recalled on December 22, 1987, petitioners were not prepared to proceed on their claim of net operating loss carryback. They had not even raised the claim in the pleadings. Their motion to continue was dilatory under Rule 134, Tax Court Rules of Practice and Procedure, and did not satisfy the "exceptional circumstances" requirement of the standing pre-trial order.

If a motion to amend the petition had previously been granted and petitioners had not been ready for trial in December 1987, the case would have been subject to dismissal for lack of prosecution. See *Montgomery v. Commissioner*, 367 F.2d 917 (9th Cir. 1966); *Freedson v. Commissioner*, 67 T.C. 931 (1977), affd. 565 F.2d 954 (5th Cir. 1978); *Brooks v. Commissioner*, 82 T.C. at 422-425. Petitioners should be no better off than they would be if they had proceeded properly with a motion for leave to amend.

Because petitioners have not filed a motion to amend their petition, we are not directly applying the criteria of Rule 41(a), Tax Court Rules of Practice and Procedure, that "leave [to amend] shall be given freely when justice so requires." While the record does not support a conclusion that petitioners were deliberately obstructive, their failure to bring the issue before the Court in the appropriate manner and within the appropriate period of time is unexcused and has a detrimental effect on our ability to dispose of cases on the merits.

Petitioners argue that the absence of an amended pleading is inconsequential because respondent had notice of petitioners' claim to the net operating loss carryback. We agree with respondent that *Vermouth v. Commissioner*, 88

[3]Because of the large number of cases pending with requests for place of trial in Los Angeles, nine comparable calendars were scheduled during the first 6 months of 1988.

T.C. 1488 (1987), supports rejection of petitioners' argument. In *Vermouth,* the notice of deficiency determined an addition to tax for fraud under section 6653(b). The taxpayer thus had notice of respondent's claim. Respondent failed to file an answer as required by Court Rules and orders. The Court permitted respondent to file an answer out of time but struck matters contained in the answer affirmatively alleging tax fraud and precluded evidence at trial in support of the addition to tax for fraud. In *Vermouth,* as here, there was no suggestion that the delay in complying with the Court's Rules or orders was deliberate or strategic, but the party responsible for the delay, with resulting prejudice to the adverse party and imposition on the Court, must bear the consequences.[4] See also *Betz v. Commissioner,* 90 T.C. 816 (1988); *Estate of Quirk v. Commissioner,* 60 T.C. 520 (1973).

The Court and the public, as well as the parties, are entitled to have cases presented while the evidence can be obtained and presented with clarity and reliability. For the reasons set forth above, we do not believe that justice favors petitioners' position. Cases dealing with belated motions to amend a pleading support respondent's position. See, e.g., *Markwardt v. Commissioner,* 64 T.C. 989, 997 (1975).

If the parties had not submitted a stipulated decision to the Court prior to January 12, 1987, the case would have been called for trial at that time. Although petitioners knew in December 1986 that they wished to pursue a new issue, they waited until after the trial date to notify the Court, thereby avoiding, without justification, the effect of the Court's orders relating to that session. Petitioners' motion to vacate decision filed in February 1987 was granted as unopposed. If respondent had opposed that motion, it is likely that the motion would have been denied. See *Stamm International Corp. v. Commissioner,* 90 T.C. 315, 321 (1988), and *Himmelwright v. Commissioner,* T.C. Memo. 1988-114. Respondent here is merely seeking to have a decision entered in accordance with the parties' prior

---

[4]Petitioners argue that *Vermouth v. Commissioner,* 88 T.C. 1488 (1987), was the Court's response to "a specific, reoccurring problem respecting the government's filing of answers in fraud cases." Another recurring problem is taxpayers' belatedly raising net operating losses.

agreement, as were the taxpayer in *Stamm International Corp.* and respondent in *Himmelwright.*

In view of our disposition of this case on the basis of the extraordinarily unwarranted and prejudicial delay by petitioners in raising their claim to a loss carryback, we need not decide whether the election to carry the loss forward was otherwise irrevocable. Respondent does not seriously argue this point in his brief, choosing to rely on the procedural posture of the case.

For the foregoing reasons, petitioners' claimed net operating loss carryback is not properly before the Court and cannot now be raised. Respondent's motion will be granted.

> *Decision will be entered in the form stipulated to by the parties prior to January 1987.*