LEONARD LANSBURGH AND ROSANNE LANSBURGH, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 26923-82—26926-82.          Filed February 27, 1989.

*Samuel C. Ullman* and *Jane W. McMillan,* for the petitioners.

*Gary F. Walker,* for the respondent.

---

[1]Cases of the following petitioners are consolidated herewith: Leonard Lansburgh, docket No. 26924-82; Estate of Morris Lansburgh, Deceased, Leonard Lansburgh, Personal Representative, and Estate of Jean Lansburgh, Deceased, Leonard Lansburgh and Morris Lansburgh, Jr., Co-personal Representatives, docket No. 26925-82; and Estate of Morris Lansburgh, Deceased, Leonard Lansburgh, Personal Representative, docket No. 26926-82.

OPINION

JACOBS, *Judge:* These consolidated cases are again before the Court;[2] this time there is a dispute in the Rule 155[3] tax computation. The Rule 155 dispute concerns the calculation of the amount petitioners had at risk under section 465 at the end of 1977 with respect to computer purchase-leaseback transactions. The amount petitioners had at risk will determine the allowability of deductions otherwise available to them. In addition, petitioners have filed a motion to abate additional interest under section 6621(c) of the Internal Revenue Code of 1986 (formerly section 6621(d) of the Internal Revenue Code of 1954). To facilitate the understanding and resolution of the disagreement between the parties, we shall briefly recite the factual background of these cases.

In December 1976, petitioners entered into purchase-leaseback transactions with Greyhound Computer Corp. (lessee) involving items of computer equipment. Payment for the equipment was structured over a 6-year period. Various promissory notes were given to evidence petitioners' purchase obligation. Several of these notes (the flip-flop notes) were nonnegotiable but recourse from December 1, 1976, until March 1, 1978, at which time the flip-flop notes became negotiable and, if not then in arrears, nonrecourse. In addition to the flip-flop notes, other notes (both recourse and nonrecourse) were given. In essence, it is the deductibility of the interest paid on these other notes (the non-flip-flop notes) in 1977 which is in controversy in the Rule 155 computation.

Concurrent with its purchase, the equipment was leased back to the lessee for a 6-year period. All the equipment was subject to pre-existing leases to end users.

All rental payments due petitioners from the lessee were paid to accounts maintained by petitioners at the First National Bank of Arizona (the bank). The bank made all the note payments on behalf of petitioners to the lessee. Petitioners received advices of deposits and withdrawals

---

[2]See *Lansburgh v. Commissioner,* T.C. Memo. 1987-491.

[3]All Rule references are to the Tax Court Rules of Practice and Procedure, and unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the taxable years in issue.

from the bank evidencing rental payments received and note payments made. All rental payments were timely received, and all note payments were timely made.[4]

In 1976, petitioner was, for purposes of section 465, at risk to the extent of $436,635,[5] of which amount $408,098 was used to allow petitioner's 1976 loss. Thus, $28,537 of the 1976 at-risk amount was available for subsequent years.

In 1977, the computer leasing activity (the activity) generated rental income in the amount of $182,008.80, of which $48,317.40 was used to pay principal and interest on the flip-flop notes and $133,691.40 was used to pay interest on the non-flip-flop notes. In addition, in 1977, petitioner contributed $209,950 in cash to the activity, of which $5,950 was used to pay interest on the non-flip-flop notes.[6] Although the rental income and interest expenses of the activity were approximately equal, because of the depreciation allowable on the computers, the activity generated a loss.

In *Lansburgh v. Commissioner*, T.C. Memo. 1987-491, we held that the transactions had economic substance and that petitioner had a valid business purpose for entering into the activity.

In 1977, deductions attributable to the activity exceeded $1,000,000. Petitioner claims entitlement to deductions for such year in the amount of $350,187.20, as follows:

(1) Deductions in an amount equal to the $182,008.80 of rental income.

(2) Deductions in an amount equal to his amount at risk, which he contends is $168,178.40. In this regard, petitioner claims he is entitled to: a depreciation deduction in the amount of $28,537, and an interest

---

[4]Leonard Lansburgh is the son of Morris and Jean Lansburgh. Morris died on Feb. 10, 1977, and Jean died on Oct. 18, 1983. Leonard and Morris individually and separately entered into similar purchase-leaseback transactions. The parties stipulated that the claimed losses from Morris' purchase and leaseback of computer equipment should be treated consistently with the treatment of losses claimed by Leonard. For purposes of this opinion, we shall discuss only dollar amounts involving Leonard who hereinafter shall be referred to as petitioner in the singular.

[5]The following amounts comprised the $436,635 total:

| | |
|---|---|
| $155,285 ................. | Principal and interest on the flip-flop notes |
| 204,000 ................. | Principal on recourse debt |
| 77,350 ................. | Cash contributed in payment of interest on |
| 436,635 | non-flip-flop notes. |

[6]The remaining $204,000 was used to pay principal on recourse debt for which petitioner increased his amount at risk for 1976. See note 5, *supra.*

deduction in the amount of $139,641.40, which latter amount is comprised of $133,691.40 paid on the non-flip-flop notes from rental income and $5,950 paid on the non-flip-flop notes from his 1977 cash contribution.

Respondent acknowledges that petitioner is entitled to a deduction in an amount equal to the $182,008.80 of rental income. He also acknowledges that petitioner is entitled to a further deduction equal to petitioner's amount at risk. Respondent claims, however, that petitioner's amount at risk is $28,537, reather than $168,178.40 as claimed by petitioner. Thus, respondent would allow petitioner a total deduction of $210,545.80, rather than the $350,187.20 claimed by petitioner.

In addition to the Rule 155 computational dispute, petitioners filed a motion to abate additional interest under section 6621(c), claiming "foot dragging" by respondent. Specifically, petitioners complain that respondent sought and obtained multiple extensions in the filing of his briefs (which extended the due date for the last brief by approximately 1 month) and failed to timely file his Rule 155 computation.

## I. *Section 465 Issue*

The purpose of section 465 is to limit the deductibility of otherwise allowable losses to the amount of the taxpayer's actual economic investment exposed to the risk of loss. Although section 465 had its origins in Congress' concern over the use of nonrecourse financing or other devices in tax oriented investments, the scope of section 465 is not limited to tax shelters. *Peters v. Commissioner,* 77 T.C. 1158, 1165 (1981).

Section 465 provides, among other things, that where an individual engages in the leasing of depreciable property, any loss claimed with respect to his investment shall be allowed only to the extent he is at risk with respect to the activity at the close of the taxable year. Sec. 465(a)(1); sec. 465(c)(1)(C). Included in the amounts for which a taxpayer is considered at risk are amounts of cash he contributed to the activity and amounts borrowed with respect to the activity. Sec. 465(b)(1). For a taxpayer to be considered at risk with respect to borrowed amounts for use in such an activity, he

must be personally liable for repayment of the borrowed amounts or have pledged property, other than property used in the activity, as security for the borrowed amounts. Sec. 465(b)(2).

Petitioner makes alternative arguments to support entitlement to his claimed deductions. First, he argues that the interest deduction under section 163 is not subject to the at-risk limitation. Alternatively, he argues that in addition to the $28,537 available from 1976, the amount he had at risk at the end of 1977 should include the $133,691.40 paid on the non-flip-flop notes from rental income as well as the $5,950 paid on the non-flip-flop note from his cash contribution. Thus, he calculates his amount at risk for 1977 to be $168,178.40. We shall discuss his latter argument first.

Petitioner argues that the $133,691.40 paid on the non-flip-flop notes from rental income, together with the $5,950 paid on the non-flip-flop notes from his cash contribution, should be treated as money contributed by him to the activity within the purview of section 465(b)(1)(A), thereby increasing his amount at risk by $139,641.40. Respondent disagrees; he claims that because the activity generated a loss for 1977, the rental income does not constitute money contributed to the activity. We agree with respondent.

The statutory language of section 465 does not provide for adjustments to a taxpayer's amount at risk in the event income or loss is generated by the activity. Further, the legislative history of section 465 provides limited guidance in this area. The Senate Finance Committee Report provides that:

> In the case of a partnership, a partner is generally to be treated as at risk to the extent that his basis in the partnership is increased by his share of partnership income.  * * *  [S. Rept. 94-938, at 50 (1976), 1976-3 C.B. (Vol.3) 88.]

Section 1.465-2(a), Proposed Income Tax Regs.,[7] describes

---

[7]Sec. 1.465-2(a), Proposed Income Tax Regs., 44 Fed. Reg. 32239 (June 9, 1979), provides in relevant part:

General rules; allowance of deductions.—(a) In general. In any taxable year, there are two ways in which deductions allocable to an activity to which section 465 applies will be allowable under section 465. First, deductions allocable to an activity and otherwise allowable will be allowable in a taxable year to the extent of income received or accrued from the activity in that taxable year. See the example at sec. 1.465-11(c)(2). Thus, to the extent there is income from the activity in a taxable year, deductions allocable to that activity will be allowable without regard to the amount at risk. Second, losses from the activity (that is, the excess of

two ways in which deductions are allowable under section 465:

(1) deductions are allowable to the extent of income received from the activity in the taxable year; and

(2) losses (deductions in excess of income) are allowable to the extent the taxpayer is at risk with respect to that activity at the close of the taxable year.

Petitioner claims the "computation of the taxpayer's at-risk amount (and the deductions allowable as a result) is *completely separate* from the computation of deductions allowable on account of income from the activity." Therefore, according to petitioner, he is entitled *first* to deductions to the extent of gross income received from the activity, which in his opinion is the $182,008.80 of gross rental income, and *second* to deductions to the extent of his amount at risk at the end of 1977, which in his opinion includes that part of the rental income used to pay interest on the non-flip-flop notes ($133,691.40). Petitioner contends that the $133,691.40 of rental income used to pay interest on the non-flip-flop notes constitutes a contribution of funds by him to the activity.[8] He also claims that, in addition to the $28,537 available from 1976, the $5,950 of outside funds used to pay interest on the non-flip-flop notes increases his 1977 amount at risk. Thus, petitioner claims his amount at risk in the activity at the end of 1977 is $168,178.40 ($133,691.40 + $28,537 + $5,950).

We agree, and respondent acknowledges, that petitioner is entitled to deductions to the extent of gross income received from the activity. We also agree that deductions are allowable to the extent petitioner is at risk; however, we believe petitioner erred in his calculation of the amount he had at risk at the end of 1977.

In our opinion, a taxpayer's amount at risk is increased only if there is undistributed net income generated from the activity to which section 465 applies and then only to the

deductions allocable to the activity over the income received or accrued from the activity) will be allowable to the extent the taxpayer is at risk with respect to that activity at the close of the taxable year. * * *

[8] A portion of the rental income ($48,317.40) was used to pay principal and interest on the flip-flop notes; it has already been included in the agreed amount at risk calculation for 1976.

extent thereof.[9] The activity involved herein, while producing gross income of $182,008.80, generated a net loss in 1977. Were we to accept petitioner's contention that the amount at risk is to be increased by the gross income, as opposed to the net income, we would be permitting petitioner to include the gross income twice in calculating the amount of his allowable deductions, a result we believe is incorrect.[10]

As of the end of 1976, petitioner had an unused amount at risk of $28,537 which was available for use in 1977. In 1977, petitioner contributed $5,950 of outside funds to pay interest on the non-flip-flop notes. Respondent failed to give petitioner credit for these funds, which in our opinion was erroneous. Adding the $5,950 of outside funds petitioner contributed to the activity in 1977 to the unused amount at risk of $28,537 results in petitioner's having $34,487 at risk as of the end of 1977. Sec. 465(b)(1)(A) and (b)(5).

Alternatively, petitioner argues that the interest deduction under section 163 is not subject to the at-risk limitation. He seeks sustenance from section 1.465-13(a), Proposed Income Tax Regs., 44 Fed. Reg. 32239 (June 5, 1979). That section, in pertinent part, provides:

Definition of loss; deductions from the activity.— (a) *General Rule.* For the purposes of section 465 allowable deductions allocable to an activity are those otherwise allowable deductions incurred in a trade or business or for the production of income from the activity.  * * *

Petitioner posits that section 465 covers only deductions incurred either in a trade or business, such as deductions under sections 162 or 167, or for the production of income from the activity, i.e., section 212 deductions. Petitioner then argues that because interest deductions under section 163 are allowable regardless of whether the interest is

[9]Sec. 1.465-22(c), Proposed Income Tax Regs., 44 Fed. Reg. 32239 (June 5, 1979), provides in relevant part:
Effect on amount at risk of money transactions.—* * *

    *        *        *        *        *        *        *

(c) *Effect of income and loss from activity on amount at risk*—(1) *Income.* A taxpayer's amount at risk in an activity shall be increased by an amount equal to the excess of the taxpayer's share of all items of income received or accrued from the activity during the taxable year over the taxpayer's share of allowable deductions which are allocable to the activity for the taxable year.* * *

[10]Petitioner claims that a combination of secs. 1.465-2(a) and 1.465-22(c), Proposed Income Tax Regs., authorizes the inclusion of rental income twice. We disagree.

incurred in connection with a trade or business or in connection with the production of income, interest deductions are not subject to the at-risk limitations. We believe this reading of the proposed regulation is too narrow.

Under section 465, a "loss" is broadly defined in section 465(d) as the excess of the allowable deductions allocable to the activity over the income received or accrued by the taxpayer during the taxable year from the activity. Moreover, the breadth of the definition of a "loss" for section 465 purposes is apparent from the legislative history which provides that the at-risk limitation applies "regardless of the kind of deductible expenses which contributed to the loss." S. Rept. 94-938, at 48 (1976), 1976-3 C.B. (Vol.3) 86.

As a general proposition, we would agree with petitioner that deductibility of interest under section 163 is not conditional upon the existence of a trade or business or an activity for the production of income. However, we believe petitioner misinterprets section 1.465-13(a), Proposed Income Tax Regs. That regulation speaks to allowable deductions *incurred* in a trade or business or for the production of income and is not limited to trade or business or production of income per se. Petitioner's interpretation of the regulation would read out the word "incurred." Thus, in our opinion, all deductions incurred in an activity to which section 465 applies, including the interest incurred in petitioner's computer leasing activity, are subject to the at-risk limitation.

To summarize the aforesaid, for purposes of the Rule 155 tax computation, petitioner is entitled to depreciation and interest deductions for 1977 in an amount equal to the sum of the $182,008.80 rental income and the $34,487 amount at risk, or $216,495.80.

II. *Section 6621(c) Issue*

Petitioners, relying on *Betz v. Commissioner,* 90 T.C. 816 (1988), allege that respondent's post trial actions in the handling of this case entitle them to an abatement of additional interest under section 6621(c). They claim this sanction should be imposed because respondent requested, and was granted, multiple extensions of time to file briefs

and because respondent failed to timely file a Rule 155 computation.

In *Betz v. Commissioner, supra,* the taxpayers timely filed a petition in June 1985. Respondent failed to timely file an answer, and in June 1987, in response to this Court's order, respondent filed a motion to file an answer out of time and lodged his answer. While we granted respondent's motion and allowed his answer to be filed, we determined that respondent should be sanctioned under Rule 104. The sanction we there thought appropriate was to deem it established that respondent erred in determining that additional interest is due under section 6621(c). *Betz v. Commissioner,* 90 T.C. at 823.

In reaching our decision in *Betz v. Commissioner,* we relied in part upon our decision in *Vermouth v. Commissioner,* 88 T.C. 1488 (1987), a case also involving an untimely answer. In *Vermouth,* respondent failed to file an answer within 60 days from the service of the petition and within an additional 60 days permitted by us pursuant to an uncontested motion to extend. In our opinion the facts in the instant case do not reach the level of severity which existed in *Betz* and *Vermouth;* therefore, petitioners' motion to abate additional interest under section 6621(c) shall be denied.

To reflect the foregoing,

*An appropriate order will be issued.*