KAREL WATERMAN, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 45258-86.     Filed August 24, 1988.

*Mark D. Pastor,* for the petitioner.
*Glorianne Gooding,* for the respondent.

OPINION

CLAPP, *Judge:* This matter is before us on respondent's motion for leave to file an amended answer. Pursuant to an order, an evidentiary hearing was held in Pasadena, California, on September 17, 1987.

## *Factual Background*

The years in issue in the underlying case are 1959, 1963-1966, and 1968. Petitioner failed to file tax returns for any of these years. Beginning in 1970, a joint investigation into petitioner's business activities was conducted by special agents and revenue agents of the Internal Revenue Service. The revenue agent submitted a report dated October 15, 1970. Additionally, in March 1972, criminal indictments were filed against petitioner for failure to file income tax returns for the tax years 1965 and 1966. In February 1980, the Department of Justice declined to prosecute, and the indictments were dismissed by the District Court.

In 1983, Revenue Agent Guy Hoppe was assigned to conduct the civil examination of the case. At the time he began the examination, Hoppe did not have in his possession the special agent's report and the exhibits that had been attached thereto. Hoppe inquired of the Criminal Investigation Division as to the whereabouts of the files and also searched for the records at the Federal Records Center in Laguna Niguel, California, but was unable to locate the files. While searching for the files at the Federal Records Center, Hoppe came across an employee of the U.S. attorney's office who recognized the case name and told Hoppe that the records were at the U.S. attorney's office. Hoppe thereafter obtained the records including the necessary exhibits.

Hoppe initially contacted petitioner's counsel on March 23, 1983, for the purpose of arranging an initial appointment to discuss the case. Approximately 14 months later, on May 3, 1984, Hoppe had his first meeting with petitioner's counsel. The audit and examination were conducted from May 3, 1984, to May 24, 1984. At the final meeting, Hoppe discussed with petitioner's counsel different theories

for treating the relevant transactions as taxable events. No agreement was reached, and in August 1984, Hoppe sent the case forward as unagreed.

When he closed the file, Hoppe retained the exhibit file and forwarded the remainder of the file to the reviewer. The retention of the exhibits was a departure from the normal procedure used by respondent. Hoppe personally knew the person who would be assigned to review the case, and he included in the file a note to the effect that he was holding the exhibit file. In doing this, Hoppe believed that his action would prevent the file from getting lost a second time. The note or memorandum stating that Hoppe had retained the exhibit file was subsequently lost or misplaced.

On August 25, 1986, respondent issued a statutory notice of deficiency which included the determination of additions to tax for fraud. A timely petition was filed on November 25, 1986, and was served on respondent on December 2, 1986. On December 31, 1986, respondent's counsel, Glorianne Gooding, was assigned the case. In January 1987, respondent's counsel made written and verbal requests to the Appeals and Criminal Investigation Divisions for the administrative files. On January 9, 1987, respondent's counsel moved to extend the time within which to answer the petition from February 2, 1987, to April 2, 1987, on the ground that the administrative file, from which respondent could draft an answer, had not yet been located. That motion was not opposed by petitioner and was therefore granted on January 20, 1987.

From early January to March 27, 1987, respondent's counsel made numerous attempts to locate the special agent's report and the exhibits which formed the basis for the determination of the fraud addition. These efforts included contacting individual members of the Criminal Investigation Division Office who were originally responsible for the joint investigation as well as visiting the U.S. Federal Courthouse in Los Angeles on the possibility that the exhibits which formed the basis for the criminal information might still be on file with the District Court. On February 24, 1987, Criminal Investigation Division records office located two small files, neither of which included the administrative records or the exhibits needed

by respondent to allege fraud. On March 13, the Appeals Division located a portion of the administrative files but not the special agent's report or the exhibits. On March 25, 1987, respondent's counsel was advised by the Facilities Management Branch that a records transmittal receipt indicated that the exhibits were in storage at the Federal Records Center in Laguna Niguel. On March 27, 1987, respondent's counsel visited the Federal Records Center and, after an extensive search by the center's employees, was informed that, although internal verification of the exhibits' shipment to the storage facility existed, the exhibits were either misfiled or had never arrived.

Since respondent's counsel had no documentary evidence supporting affirmative allegations of fraud, on April 3, 1987, respondent's counsel filed an answer to the petition which omitted affirmative allegations of civil fraud.

On May 1, 1987, respondent's counsel telephoned Revenue Agent Hoppe and discovered that he had retained the necessary exhibits and was still holding them. From May 1 to June 26, 1987, respondent's counsel met with Hoppe to discuss the case and prepare an amended answer. On June 29, 1987, respondent filed a motion for leave to file an amended answer. The proposed amended answer includes affirmative allegations of fraud and also asserts an additional theory of liability which would increase the deficiency and additions to tax for fraud. On July 14, 1987, petitioner filed his opposition to respondent's motion for leave to file an amended answer.

## Discussion

Rule 41(a), Tax Court Rules of Practice and Procedure, provides in relevant part that a pleading to which no responsive pleading is permitted may be amended at any time within 30 days after it is served if the case has not yet been placed on a trial calendar. Otherwise, the pleading may be amended only by leave of Court or by written consent of the adverse party, and leave shall be given freely when justice so requires.

Petitioner relies on *Vermouth v. Commissioner*, 88 T.C. 1488 (1987), and asserts that respondent's bureaucratic inertia has prejudiced petitioner; therefore, respondent

should be precluded from amending his answer. Petitioner points out an unexplained 3-year period between the time criminal charges were dismissed and the time he was contacted by a revenue agent to reopen the civil examination, as well as a 2-year period between the close of the examination and the issuance of the statutory notice of deficiency. Petitioner claims that these delays have created severe handicaps for him in trying to assemble evidence concerning tax events which occurred more than 20 years ago. Petitioner asserts that respondent has had the relevant information in his possession for more than 15 years and that respondent should not be allowed to correct his failure to act on this information earlier.

Petitioner also claims he is prejudiced by a lack of notice with respect to the additional theory respondent would assert in the amended answer.

Respondent argues that the relevant time period to be used in judging respondent's diligence and reasonableness is the time between the filing of the petition and the lodging of the proposed answer, not the entire time the matter has been in controversy. Respondent asserts that he exercised due diligence within this period in attempting to locate the necessary files and exhibits, and that petitioner will not be prejudiced by the delay in filing the amended answer. Furthermore, respondent disputes petitioner's claim that he did not have notice that alternative theories of liability could be pursued.

We are not persuaded by petitioner's arguments that he has been prejudiced by respondent's delay in issuing the notice of deficiency. In this regard, petitioner's reliance on *Vermouth v. Commissioner, supra,* is misplaced. First, petitioner incorrectly states that *Vermouth* did not restrict the evaluation of respondent's diligence to the period of time in which District Counsel was involved. Petitioner's claim that the relevant period includes the entire time since 1969, when petitioner was first interviewed by the Internal Revenue Service, represents an unwarranted extension of *Vermouth.* In *Vermouth,* we concluded that respondent was deficient in exercising reasonable diligence, and in reaching that conclusion, we limited our review of respondent's actions to the period after the petition was filed.

Since *Vermouth,* this Court has also decided *Betz v. Commissioner,* 90 T.C. 816 (1988). There we also concluded that respondent failed to establish that he had exercised reasonable diligence to ensure that his answer was timely filed. Again, in considering the matter, we limited our review to respondent's actions in the post-petition period.

To avoid any future attempts to characterize *Vermouth* more expansively than we intended, we now clearly state that in cases such as these where we must evaluate respondent's diligence and reasonableness, our inquiry is limited to respondent's actions, or inaction, in the period following the filing of the petition.

Petitioner's argument with regard to prejudice resulting from respondent's delay in issuing a statutory notice of deficiency is not a proper basis for objecting to respondent's motion for leave to file an amended answer. This argument is essentially an attack on the validity of the notice of deficiency and is inappropriately raised at this time. A trial before the Tax Court is a proceeding de novo, and absent substantial evidence of unconstitutional conduct by respondent, we generally will not look behind a notice of deficiency to examine respondent's motives or procedure leading to his determination. *Greenberg's Express, Inc. v. Commissioner,* 62 T.C. 324 (1974).

In determining whether justice requires granting respondent's motion to file an amended answer, we direct our inquiry to whether petitioner has been prejudiced by the 12-week period which lapsed between the time respondent's counsel filed her answer and the time she moved to file an amended answer. There is no evidence in the record which would support a finding that petitioner has been prejudiced by this delay.

Furthermore, we conclude that the delay was not due to a failure on the part of respondent to exercise reasonable diligence. In this regard, we note that *Vermouth v. Commissioner, supra,* is factually distinguishable from the case at issue here. In *Vermouth,* respondent's answer was initially due October 7, 1985. On October 1, 1985, respondent's counsel telephoned the Appeals Division several times in an effort to obtain the administrative file which was necessary to draft an answer including sufficient facts to make

affirmative allegations of fraud. Respondent's counsel was told that the case had not yet been received. Thereupon respondent's counsel requested and received a 60-day extension of time from October 7 to December 6, 1985. On November 21, 1985, respondent's counsel again telephoned the Appeals Division to inquire as to the whereabouts of the administrative file. The Appeals Division was still unable to locate the file. On November 25, counsel wrote a memorandum to the Chief of Appeals, Los Angeles District, requesting that he make every effort to get the administrative file to respondent's counsel to enable her to make the affirmative allegations for fraud. That memorandum apparently was ignored. On November 29, respondent requested an additional 60 days in which to file the answer. The taxpayer objected to the second motion and requested that sanctions be imposed. We concluded there that respondent's failure to proceed expeditiously was attributable primarily to bureaucratic inertia and not to conditions beyond respondent's control.

These facts are clearly distinguishable from those in the matter now before us. Here, respondent's counsel made numerous attempts to track down the necessary administrative file. This case is also distinguishable from *Betz v. Commissioner, supra,* where respondent filed a motion for leave to file answer out of time almost 2 years after the petition was filed. The record there revealed that an answer and certificate of service were timely prepared; however, the answer was never received by the Court, nor was a copy of the answer ever received by taxpayer's counsel. We concluded there that respondent failed to take any steps to ensure that the answer had been mailed to or received by the Court. By contrast, here respondent's counsel steadfastly pursued the matter of the missing file even after she had filed an answer.

The delay here was due to Agent Hoppe's retention of the crucial file. Thus, it resulted not from a lack of reasonable diligence but rather from Hoppe's desire to avoid the very bureaucratic inertia which we criticized in *Vermouth.* Accordingly, we conclude that respondent exercised reasonable diligence under the circumstances and that no sanction in the form of a denial of respondent's motion is warranted.

Furthermore, although Agent Hoppe's efforts were well-intentioned, and perhaps understandable in light of the difficulty he had encountered in locating the file, in the end, he created precisely the problem he sought to avoid.

We turn now to petitioner's claim that respondent's amended answer proposes an entirely new theory of liability and would operate to prejudice petitioner because he had no notice that respondent would assert such a theory. We are not persuaded by this argument. Respondent's amended answer proposes to recharacterize a transaction to allege that petitioner received income from a sale in 1963, rather than income from the discharge of indebtedness in 1968, as was set forth in the notice of deficiency. The record reveals that a variety of theories concerning this transaction were discussed during the examination process with petitioner's counsel. Petitioner was, therefore, put on notice that the transaction and the surrounding facts were in issue. In any event, respondent is entitled to assert alternative and inconsistent theories. Rule 31(c), Tax Court Rules of Practice and Procedure. Further, we note that in respect of any new matter, allegations of fraud, increases in deficiency, and affirmative defenses pleaded in his answer, the burden of proof is upon the respondent. Rule 142(a), Tax Court Rules of Practice and Procedure. For the foregoing reasons, we conclude that petitioner has failed to show that he would be prejudiced by allowing the answer to be amended.

We have concluded that the delay involved here has not prejudiced petitioner and was not due to a lack of reasonable diligence on the part of respondent. Therefore, respondent's motion for leave to file an amended answer will be granted.

*An appropriate order will be issued.*