ROBERT ZACKIM AND CAROLE ZACKIM, PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2533-87.          Filed December 6, 1988.

*James J. Mahon,* for the petitioners.
*Jill A. Frisch,* for the respondent.

OPINION

WILLIAMS, *Judge*: In his statutory notice of deficiency issued November 14, 1986, the Commissioner determined deficiencies in petitioners' Federal income tax for the taxable years 1978, 1979, and 1980, and additions to tax for fraud against petitioner Robert Zackim as follows:

| Year | Deficiency | Addition to tax sec. 6653(b) [1] |
|------|------------|----------------------------------|
| 1978 | $3,795 | $1,898 |
| 1979 | 6,868 | 3,434 |
| 1980 | 6,727 | 3,364 |

Respondent previously had issued a notice of deficiency on May 27, 1982, for petitioners' 1979 taxable year, determining a deficiency of $559. After concessions, the two issues remaining for our decision are (1) whether respondent may issue a second notice of deficiency pursuant to section 6212(c)(1) on the ground of fraud where he knew prior to entering into a stipulated decision document in this Court that petitioner Robert Zackim was the subject of a criminal tax fraud investigation, and (2) if so, whether he is precluded from litigating the fraud issue in these circumstances by the doctrine of res judicata.

This case was submitted on a stipulated record pursuant to Rule 122, Tax Court Rules of Practice and Procedure. At the time they filed their petition in this case, petitioners resided at Riverdale, New Jersey.

Respondent has conceded that petitioner Carole Zackim is an innocent spouse pursuant to section 6013(e). Petitioner Robert Zackim (petitioner) has conceded that he is liable for the deficiencies and additions to tax determined against him for 1978 and 1980. He also has conceded that the underpayment determined for the taxable year 1979 is due to fraud. The parties further have agreed that if respondent prevails on the issue before us, then there is a deficiency in income tax for the taxable year 1979, and an addition to tax for

---

[1]All section references are to the Internal Revenue Code of 1954 as in effect during the years in issue.

fraud due in the amounts determined in the notice of deficiency.

Respondent issued a notice of deficiency for petitioners' 1979 taxable year on May 27, 1982. Petitioners timely filed a petition in this Court for redetermination of the deficiency on August 24, 1982, docket No. 21444-82. On November 19, 1984, petitioner's then counsel met with an attorney in respondent's Office of District Counsel, New York, New York, concerning a criminal referral made by respondent's Criminal Investigation Division against petitioner for the years 1978, 1979, and 1980. At the time the criminal referral was made, petitioner's then counsel was provided with the civil deficiency and fraud figures that had led to the criminal referral. Specifically for 1979, respondent's counsel informed petitioner's then counsel that petitioner would be liable for an increased deficiency of $6,390 and an addition to tax for fraud of $3,195. On December 5, 1984, respondent formally advised petitioner by letter that his case had been referred to the Department of Justice for prosecution.

On October 23, 1985, this Court entered its decision in the case of Robert Zackim and Carole Zackim, docket No. 21444-82, pursuant to agreement of the parties. Petitioners conceded that there was a deficiency in income tax due for their taxable year 1979 in the amount of $559.

Prior to the entry of the decision in docket No. 21444-82, in September 1985, petitioners' then counsel informed respondent's appellate office that petitioner was under investigation by the Criminal Investigation Division. The appellate office relayed petitioners' counsel's statement to the District Counsel attorney responsible for the Tax Court case. Respondent's Criminal Investigation Division had examined petitioner's return for the taxable year 1979 and other years, and respondent's counsel had approved referral of the case to the Department of Justice for prosecution at the time the decision in docket No. 21444-82 was entered. Respondent's counsel was aware of these actions.

Petitioner was indicted on November 27, 1985. The indictment charged petitioner with one count of violating section 7201 and one count of violating section 7206(1) for each of the years 1978, 1979, and 1980. On February 10,

1986, petitioner pled guilty to violating section 7206(1) for each of the years 1978, 1979, and 1980. On November 14, 1986, respondent mailed a notice of deficiency determining deficiencies in petitioners' 1978 and 1980 Federal income taxes and additions to tax for fraud, and an increased deficiency for 1979 and an addition to tax for fraud.

We must decide whether, under the facts described, respondent was prohibited from issuing a second notice of deficiency to petitioners for the taxable year 1979. As a general rule, once respondent has mailed a notice of deficiency and the taxpayer has filed a timely petition with this Court, respondent may not issue another notice of deficiency for that year. Sec. 6212(c)(1). One exception to the general rule, however, permits respondent to issue a second notice of deficiency "in the case of fraud." Sec. 6212(c)(1).

Petitioner argues that the principle of res judicata bars relitigation of any issue relating to the taxable year 1979 that was or could have been raised in the prior proceeding. On this ground, he argues that the statutory notice was invalid. Petitioner argues that because respondent had concluded his fraud investigation and decided to refer the case to the Justice Department for prosecution and thus knew of the fraud investigation before he agreed to settle the Tax Court case at docket No. 21444-82, respondent cannot raise the issue of fraud in a second deficiency notice. Respondent counters that the plain language of section 6212(c)(1) provides only that a second deficiency notice may be issued "in the case of fraud" and imposes no limitations based on when the fraud is discovered.

The technical distinction between the two issues in this case, viz, whether the statutory notice is valid, and whether respondent is barred from relitigating the fraud issue under the doctrine of res judicata, is blurred by the substantive effect of our resolution of the application of res judicata. Petitioner focuses on the substantive effect of applying res judicata and argues that the result is an invalid statutory notice. Respondent focuses on his statutory authority to issue a second notice of deficiency and argues that if he can issue a second statutory notice, the Court has jurisdiction,

and, therefore, he cannot be precluded from litigating the fraud issue.

The doctrine of res judicata is judicial in origin and is intended to prevent repetitious lawsuits involving the same cause of action thus promoting repose of past disputes. *Commissioner v. Sunnen*, 333 U.S. 591, 597 (1948). In *Sunnen*, the Supreme Court explained the doctrine of res judicata as follows:

> The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Cromwell v. County of Sac*, 94 U.S. 351, 352 [(1876)]. The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment. [333 U.S. at 597. Citations omitted.]

Res judicata thus "preclude[s] parties from contesting matters that they have had a full or fair opportunity to litigate [and] protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153-154 (1979). (Fn. ref. omitted.) There is no question as to the validity or finality of this Court's decision in respect of petitioners' 1979 taxable year. There is also no question that respondent could have raised the fraud issue in the proceeding that culminated in the Court's decision for petitioners' 1979 taxable year.

Section 6212(c)(1) provides for the issuance of a second notice of deficiency "in the case of fraud." The provision that became section 6212(c)(1) originally was enacted as section 274(f) of the Revenue Act of 1926, Pub. L. 20, 44 Stat. 56, and has been reenacted several times without significant substantive change. In 1926, the doctrine of res judicata was well entrenched in the law. E.g., *Cromwell v. County of Sac*, 94 U.S. 351, 352 (1876). There is no indication that Congress, in allowing for a second deficiency notice to be issued, intended generally to override the doctrine of res judicata. The legislative history, although it

is not entirely clear, suggests that Congress contemplated the issuance of a second notice of deficiency only if fraud was not discovered until after our predecessor, the Board of Tax Appeals, entered its decision:

Under the existing law and the House bill the 5 per cent [sic] and 50 per cent [sic] additions to the tax in case of negligence or fraud are to be assessed and collected in the same manner as if they were a deficiency, i. e., [sic] can only be assessed after the taxpayer has been sent a notice by registered mail. It sometimes occurs that after the deficiency letter has been sent out fraud or negligence is for the first time discovered by the Commissioner. In order to avoid the necessity of sending out a second notice to the taxpayer in such cases and other similar cases, it is provided in section 274(e) that the Board shall have jurisdiction upon the appeal from the original deficiency letter to determine whether any penalty, additional amount, or addition to the tax should be assessed, whether or not the Commissioner has asserted such claim in the deficiency letter or in his pleadings. If the fraud is discovered after the Board's decision, the Commissioner can send notice thereof, on which the taxpayer can appeal to the Board. [S. Rept. 52, 69th Cong., 1st Sess. 26 (1926), 1939-1 C.B. (Part 2) 332, 353.]

This legislative history seems to indicate that Congress had before it the concern of respondent's administrative capacity to pursue fraud when the issue of fraud could not have been raised in a prior proceeding. The Senate Finance Committee expressly stated that if the fraud is discovered after the notice of deficiency is sent, the Court "shall have jurisdiction * * * whether or not the Commissioner has asserted such claim in the deficiency letter or in his pleadings." If fraud is discovered prior to the Court's decision becoming final, the Court has jurisdiction over the fraud issue in that proceeding. If fraud is discovered after the Court's decision becomes final, the Court would not have had jurisdiction over the fraud issue in the closed proceeding. The only procedure for raising the fraud issue after the decision becomes final is for respondent to issue a second notice of deficiency. If section 6212(c)(1) were not in the Code, then respondent could not litigate an after-discovered fraud issue because he would be precluded from issuing a second notice of deficiency.

Looking then to the legislative history of section 274(f) of the Revenue Act of 1926, the predecessor of section 6212(c), we find that Congress did not express any understanding

that the statutory phrase at issue—"in the case of fraud"—should apply to *any* case of fraud. Rather, Congress explained that this language was designed to permit the issuance of a second deficiency notice in cases in which evidence of fraud is discovered after the completion of court proceedings resulting from the first deficiency notice. Congress understood and articulated its understanding that, if the Court had not entered a final decision, upon discovering fraud respondent could file an amended answer raising the fraud issue. Congress further articulated its understanding that if fraud were discovered after the Court had entered its decision, respondent would not have an opportunity to raise the fraud issue unless respondent could issue a second notice of deficiency; only by express statutory provision could Congress give respondent the opportunity to raise fraud.

Respondent argues that we should not look to the legislative history because the language of section 6212(c) is clear on its face and imposes no limitation based on when fraud is discovered. We agree that, in general, the plain language of a statute controls. The statutory language of section 6212(c)(1) provides that a second notice of deficiency may be issued "in the case of fraud." The decisive issue in this case is not, however, whether the statutory notice of deficiency is valid, but whether res judicata bars respondent from relitigating petitioners' 1979 taxable year.

In this case, there is no fraud on the Court or other ground invalidating our prior decision. Respondent had ample opportunity to raise the issue in the prior litigation. The Government did not lack knowledge and had no ground for failing to appreciate the consequences of choosing not to amend respondent's answer in the earlier litigation. Respondent's counsel in the prior proceeding was fully aware of respondent's criminal tax fraud investigation of petitioner for 1978, 1979, and 1980, and of the referral for prosecution to the Department of Justice well before she agreed to settle the Tax Court case for 1979. Respondent could have requested leave to amend his answer to place the additional deficiency and addition to tax for fraud for 1979 in issue. As he typically does, respondent could have requested the Court to stay the civil proceeding pending completion of the

criminal investigation and possible trial. Indeed, these are the normal courses of action for respondent in hundreds of Tax Court cases.[2] Instead, respondent chose to ignore the criminal fraud investigation.

On November 19, 1984, almost 1 year prior to the entry of decision in the prior Tax Court proceeding, respondent's counsel conferred with petitioner's counsel to inform him that respondent's Criminal Investigation Division had recommended a referral to the Department of Justice for prosecution. At the same meeting, petitioner's counsel was given the amounts determined as unreported income for 1978, 1979, and 1980, and the proposed civil deficiencies in income tax and additions to tax for fraud that resulted from the criminal investigation. On December 5, 1984, respondent's counsel wrote to petitioner's counsel to formally advise him of respondent's referral to the Justice Department. While discussing settlement of the 1979 tax liability determined in the first deficiency notice, petitioner's counsel specifically mentioned the fraud issue to respondent's appeals officer and pointed out the pending criminal investigation. After conferring with District Counsel, respondent decided to pursue the settlement for 1979 and eventually signed a stipulated decision. Before that decision became final, petitioner was indicted for income tax evasion and for filing a false or fraudulent return.

Respondent argues that he cannot be forced to move to amend his answer in the Tax Court rather than issuing a second notice of deficiency because doing so would subject him to the Court's discretion, and if the Court chose not to allow the amendment, he would be precluded from raising fraud. Respondent ignores that leave to amend is freely given absent prejudice to the opposing party. See *Waterman v. Commissioner*, 91 T.C. 344 (1988); *Vermouth v. Commissioner*, 88 T.C. 1488 (1987). Respondent's argument is without merit in this case because he turned his back on the extended opportunity he had in the prior litigation to raise the fraud issue.

---

[2]Petitioners in such circumstances normally do not object. If an objection is raised to postponing the case until completion of the criminal proceedings, the Court balances the "substantial weight" accorded to the public interest in law enforcement against the "right of a civil litigant to a reasonably prompt determination of his civil claims or liabilities." *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962); *Singleton v. Commissioner*, 65 T.C. 1123 (1976).

Respondent had almost a year after the criminal referral until he settled petitioners' Tax Court case for 1979 to raise the additional deficiency and addition to tax for fraud for 1979. Further, the case had been pending in this Court for 3 years when the stipulated decision was entered. Respondent failed to plead the issue when he had the opportunity. We do not believe that section 6212(c) was intended to give respondent a second chance to litigate in these circumstances.

Respondent further contends that we cannot impute knowledge of petitioner's fraud to him at the time he was involved in settlement discussions for the 1979 taxable year. He argues that the decision whether fraud can be shown by clear and convincing evidence is best left to administrative discretion and the Court should not inquire into when the Internal Revenue Service, as an institution, learned of facts sufficient to believe it could establish fraud by clear and convincing evidence. Respondent's counsel ignores that she represents respondent in his institutional capacity. The knowledge of respondent's counsel in settling cases on behalf of her client is, therefore, imputed to him. At the time respondent agreed to settle petitioners' Tax Court case for 1979, the Criminal Investigation Division and respondent's counsel had determined that fraud could be established by more than clear and convincing evidence, as the referral for criminal prosecution demonstrates.

In *Breman v. Commissioner*, 66 T.C. 61 (1976), we considered respondent's ability to issue a second notice of deficiency under section 6212(c)(1) in a case in which the doctrine of res judicata did not apply. In that case, the taxpayers argued that we lacked jurisdiction based on a second deficiency notice under the doctrine of res judicata, because a notice of deficiency had been issued previously for the year in issue, and a final decision had been entered. *Breman v. Commissioner*, 66 T.C. at 66-67. We noted that before we could decide whether res judicata applied, we first had to have jurisdiction to make such a determination. The fraud in *Breman* was discovered after our first decision had become final, and we concluded that the second notice of deficiency was properly issued. *Breman v. Commissioner*, 66 T.C. at 69. In this case, as in *Breman*, we have jurisdiction,

but *Breman* does not, as respondent would have us hold, stand for the proposition that res judicata has no application to any case of fraud.

In this case, although the notice is valid, respondent is precluded from litigating, assessing, and collecting the deficiency and addition to tax for 1979 under the doctrine of res judicata. Res judicata is an affirmative defense that is a matter of pleading and proof. Rule 39, Tax Court Rules of Practice and Procedure. In this case, petitioner has pled and proved that res judicata properly applies to bar respondent from relitigating an increased deficiency and an addition to tax for fraud for 1979. As to the years 1978 and 1980, no deficiency notice was previously issued, and the deficiency notice is valid. Petitioner has conceded the deficiencies and additions to tax for those years.

> *Decision will be entered for the respondent as to petitioners' 1978 and 1980 taxable years and a decision will be entered for the petitioners as to the taxable year 1979.*

Reviewed by the Court.

NIMS, CHABOT, KÖRNER, COHEN, CLAPP, GERBER, WRIGHT, PARR, WELLS, RUWE, WHALEN, and COLVIN, *JJ.*, agree with the majority opinion.

---

WHITAKER, *J.*, concurring: I agree with the majority that the decisive issue in this case is not whether the statutory notice of deficiency is valid, but whether res judicata bars respondent from relitigating petitioner's 1979 taxable year. However, we cannot reach the decisive issue without first interpreting section 6212(c)(1) because our jurisdiction to consider res judicata depends upon the validity of the second deficiency notice. As we said in *Midland Mortgage Co. v. Commissioner*, 73 T.C. 902, 907 (1980), our "jurisdiction exists only if there has been issued a *valid* statutory notice of deficiency * * * and a timely petition filed therefrom." (Emphasis supplied.)

Section 6212(c)(1) provides the only statutory authority for issuing a second notice of deficiency. In interpreting

that section, the majority appears to hold that a second notice of deficiency can be issued only where fraud is discovered after our prior decision has become final.[1] In this case, the fraud was discovered prior to entry of the stipulated decision in the first case resulting from the first deficiency notice. Under the majority's interpretation of section 6212(c)(1), there was no authority for the second deficiency notice. Accordingly, the majority should have held that the second notice of deficiency is invalid. In that circumstance, we would lack jurisdiction of the year 1979.

If we lack jurisdiction, our decision must be dismissal of the petition as to the year 1979,[2] rather than a decision for petitioners. Without jurisdiction, we cannot determine whether the doctrine of res judicata applies nor is there any need to do so. Respondent's only remedy should have been to amend his answer in the prior case. But in so interpreting section 6212(c)(1), the majority ignores our holdings in *Arthur A. Everts Co. v. Commissioner,* a Memorandum Opinion of this Court dated July 12, 1949 (8 T.C.M. 707, 18 P-H Memo T.C. par. 49,189), and *Breman v. Commissioner,* 66 T.C. 61 (1976). Although the facts in *Breman* comport with the majority's interpretation of section 6212(c)(1), the discussion of the statute in that opinion is not so limited.

The unqualified language of section 6212(c)(1) provides that respondent may issue a second notice of deficiency "in the case of fraud." On its face, the statute appears clear and a literal reading of the phrase in question supports the validity of the second notice of deficiency issued in this case. The majority, however, doubts that Congress intended a literal reading of the statute and it searched through the legislative history to confirm its doubt. The majority anchors its narrow interpretation of section 6212(c)(1) in the language of S. Rept. 52, 69th Cong., 1st Sess. 26 (1926), 1939-1 C.B. (Part 2) 332, 353, which reads as follows: "If the fraud is discovered after the Board's decision, the Commissioner can send notice thereof, on which the taxpayer can appeal to the Board." I find this statement to be merely illustrative of the intended scope of section 274(f) of

---

[1] The majority may not intend such a narrow construction of sec. 6212(c)(1) although in my judgment that is the way the opinion reads and will be interpreted.

[2] This Court has jurisdiction to determine jurisdiction or our lack of it. *Estate of Young v. Commissioner,* 81 T.C. 879, 881 (1983) (Court-reviewed).

the Revenue Act of 1926, Pub. L. 20, 44 Stat. 56, rather than a description of its entire scope. By so limiting section 6212(c)(1), the majority unnecessarily limits respondent's authority to issue a second notice of deficiency in other situations where a second notice might produce a more orderly procedure.

If a second notice can be issued only where fraud is discovered after our decision in the first case becomes final, in every other case, fraud must be raised by an amended answer. An amended answer would require leave of Court, as respondent complains. If that were the only route available to respondent, we would find ourselves under considerable compulsion to allow the amendment, even though that might mean continuing a case about to be tried or recessing a trial or reopening a record (see *Breman v. Commissioner, supra* at 69-70 n. 5). None of those choices is necessarily efficient, or economical, either from the viewpoint of the trial court or the parties. Up to this point, we have frequently declined to allow respondent to amend his answer because of prejudice to the taxpayer. See, e.g., *Law v. Commissioner,* 84 T.C. 985, 990-994 (1985); *Sundstrand Corp. and Subsidiaries v. Commissioner,* T.C. Memo. 1986-531. Respondent apparently fears we will continue to do so, even though respondent is not dilatory in raising fraud.

I believe that the statute should be interpreted so as to give respondent flexibility either to file a motion for leave to amend his answer or to issue a second notice. When facts showing fraud are discovered so close to the trial date that trial of the fraud issue would be impracticable, respondent should probably call the facts to the trial judge's attention so that an informed decision can be made as to which procedure to follow, that is, whether to amend the answer or issue a second notice of deficiency. Obviously, where facts showing fraud are known to respondent well in advance of a trial date, respondent must amend his answer, since res judicata would bar relitigating the issue, as the majority holds. Where the trial has been concluded, respondent should be free to exercise administrative discretion as to the course of action to follow. In neither case, however, should the trial judge be placed under any compulsion to allow an

amended answer. As in every other case of an amended pleading, we should be free to exercise our sound discretion.

Traditional res judicata rules permit a judge some control over the preclusive effects of a prior decision on a claim made in a subsequent proceeding. *Adolph Coors Co. v. Sickler,* 608 F. Supp. 1417, 1430 (C.D. Cal. 1985). Thus a trial judge may allow a litigant to split a cause of action where all claims have been timely raised. *Nilsen v. City of Moss Point, Miss.,* 701 F.2d 556, 563 (5th Cir. 1983). Similarly, this Court should retain the discretionary power in appropriate circumstances to deny respondent leave to amend his answer, but to permit him to issue a second notice of deficiency. Section 6212(c)(1) is certainly broad enough in its literal language to permit that. Furthermore, nothing in the legislative history precludes such an interpretation. We should not in this case hold that the statutory authority of section 6212(c)(1) is to the contrary.

While I agree with the majority's application of res judicata, and hence concur in the result, the majority cannot properly reach that issue in view of itsinterpretation of section 6212(c)(1).

KÖRNER and JACOBS, *JJ.,* agree with this concurring opinion.

---

SWIFT, *J.,* dissenting: The majority opinion misinterprets section 6212(c)(1), fails to consider recognized exceptions to the rules of res judicata and collateral estoppel, and fails to apply those exceptions to the facts of this case.

*Section 6212(c)(1)*

Under the interpretations of section 6212(c)(1) as set forth in the majority and concurring opinions, the effect is the same—respondent is out of court. The majority opinion regards as valid a second notice of deficiency with respect to previously discovered fraud but would bar respondent from pursuing the issues raised in the second notice of deficiency. The concurring opinion regards such a notice of deficiency as invalid ab initio. Respectfully, I suggest that neither of these interpretations is correct.

Section 6212(c)(1) should be read together with section 6501(c)(1) and (2) as authorizing a second notice of deficiency based on fraud whenever respondent chooses to issue the second notice, and without any limitation as to when the first notice was issued or when fraud was discovered. This interpretation comports with the plain language of sections 6212(c)(1) and 6501(c)(1) and (2).[1] The latter section provides that respondent may make assessments with respect to civil tax fraud *at any time*. The moment in time respondent discovers or administratively determines fraud and other administrative factors simply are not relevant to respondent's authority under section 6501(c)(1) and (2) to make at any time assessments based on fraud.

The strong public policy against civil tax fraud is the basis for the unlimited statute of limitations on fraud determinations under section 6501(c)(1) and (2). This is the same public policy that supports a parallel reading of section 6212(c)(1), and that should preclude the imposition of bureaucratic limitations on respondent's authority under section 6212(c)(1) that will result from the majority opinion.

The majority imposes vague and indefinite time constraints on when a notice of deficiency determining fraud may be issued. This is inconsistent with the clear thrust of section 6501(c)(1) and (2). I would require specific language in section 6212(c)(1) before I would adopt a time constraint so inconsistent with section 6501(c)(1) and (2).

In my opinion, section 6212(c)(1) is intended merely to give respondent the mechanical ability to assess civil tax fraud at any time, as he is authorized to do under section 6501(c)(1) and (2). Where a notice of deficiency already has been issued, section 6212(c)(1) simply provides that the normal rule of section 6212(c) (that only one notice of deficiency can be issued with respect to a particular taxable

---

[1]Sec. 6501(c)(1) and (2) provides as follows:

SEC. 6501(c). EXCEPTIONS.—

(1) FALSE RETURN.—In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time.

(2) WILLFUL ATTEMPT TO EVADE TAX.—In case of a willful attempt in any manner to defeat or evade tax imposed by this title (other than tax imposed by subtitle A or B), the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time.

year) will not apply, and respondent may issue another notice of deficiency to determine civil tax fraud.

I do not read the legislative history quoted in the majority opinion (p. 1006, *supra*) as supporting the majority's interpretation of section 6212(c)(1). The most that can be concluded from that legislative history is that Congress, in enacting the predecessor provision to section 6212(c)(1), intended to give respondent broad authority to determine fraud at any time—by amendment to the notice of deficiency where respondent initially elects that route and where this Court allows the amendment, or by issuance of a second notice of deficiency where respondent initially elects that route or where this Court refuses to allow respondent to amend the first notice of deficiency in a pending proceeding. In either of these scenarios, section 6212(c)(1) appears to me to have been designed to insure that respondent will be able to raise civil tax fraud.

## Res Judicata and Collateral Estoppel

Where a second notice of deficiency determining fraud has been issued with respect to "after-discovered" fraud, the majority apparently agrees that in addition to the fraud issue that may be determined by respondent in the second notice of deficiency, the original substantive tax adjustments also may be increased. The ability of respondent in this situation to reopen the substantive tax issues that were specifically resolved in the context of the first notice of deficiency clearly violates traditional notions of res judicata and collateral estoppel. If res judicata or collateral estoppel were intended by Congress to be a limiting doctrine on respondent's authority under section 6212(c)(1), I believe Congress would have limited respondent's authority in the second notice of deficiency to the previously undetermined fraud addition to tax and would have precluded respondent in the second notice of deficiency from changing the substantive tax adjustments reflected in the first notice of deficiency. That section 6212(c)(1) does not so limit respondent's second notice of deficiency is a strong indication that res judicata and collateral estoppel were not intended to be a limitation on respondent's authority to issue notices of deficiency under section 6212(c)(1).

Although the rules of res judicata and collateral estoppel are recognized as rules of fundamental and substantial justice, the rules themselves are based on important principles of public policy. See *Federated Dept. Stores v. Moitie,* 452 U.S. 394 (1981). A still-viable exception to the rules of res judicata and collateral estoppel provides that those rules are not to be applied where to do so would cause a manifest injustice or wrong. 18 Wright & Miller, Federal Practice and Procedure, secs. 4424 and 4426 (1981). 1B Moore's Federal Practice, par. 0.405[11] (1988). *United States v. LaFatch,* 565 F.2d 81, 83-84 (6th Cir. 1977), cert. denied 435 U.S. 971 (1978); *Moch v. East Baton Rouge Parish School Board,* 548 F.2d 594, 597-598 (5th Cir. 1977), cert. denied 434 U.S. 859 (1977); 1 Restatement, Judgments 2d, sec. 28(b)(subsection (2)) (1980). The Third Circuit, to which an appeal in this case would lie, has stated that res judicata "should not be applied inflexibly to deny justice." *Smith v. Pittsburgh Gage & Supply Co.,* 464 F.2d 870, 874 (3d Cir. 1972). The Supreme Court has commented that—

> Because res judicata may govern grounds and defenses not previously litigated * * * it blockades unexplored paths that may lead to truth. For the sake of repose, res judicata shields the fraud and the cheat as well as the honest person. It therefore is to be invoked only after careful inquiry. * * * [*Brown v. Felsen,* 442 U.S. 127, 132 (1979).]

The Supreme Court concluded in *Brown* that res judicata should not be applied in a bankruptcy proceeding to bar fraud allegations with respect to a debt obligation even though the debt obligation had been reduced to judgment in an earlier State court proceeding.

The public interest exception to the application of res judicata would appear to be particularly appropriate to the facts before us. Petitioner now admits fraud in the filing of his 1979 Federal income tax return. If petitioner knew of his fraud when he filed his tax return (which he has admitted) and if he knows of it now (which he has admitted), petitioner clearly knew of his fraud when he or his lawyer negotiated a $559 settlement of the tax adjustments reflected in respondent's first notice of deficiency. In my opinion, petitioner's failure to disclose to respondent or to admit his fraud in the context of that settlement constitutes a perpetuation or further concealment of the

fraud relating to petitioner's 1979 tax return. The public interest exception to res judicata would suggest that res judicata not be applied in this situation.

The argument that res judicata not be applied in this case is buttressed further by the recognition that no adjudication occurred of the issues reflected in the first notice of deficiency. Only a settlement or consent judgment was agreed to. As has been stated, "to the extent individual issues or entire judgments rest on admission or consent [i.e., on settlements] * * * a major element of preclusion is missing." 18 Wright & Miller, Federal Practice and Procedure, sec. 4443, at 381 (1981). Wright & Miller go on to acknowledge that in the settlement context, res judicata and collateral estoppel may still be appropriate but that "the basically contractual nature of consent judgments has led to general agreement that preclusive effects [i.e., res judicata and collateral estoppel] should be measured by the intent of the parties." Wright & Miller, *supra* at 384. I find nothing in the majority opinion that would support a finding that either petitioner or respondent intended the settlement of the tax adjustments relating to the first notice of deficiency to constitute a binding and final resolution of the pending fraud investigation relating to petitioner's 1979 tax return.[2]

Fraud was not raised as part of the first notice of deficiency. It was not negotiated. It was not adjudged. Petitioner's counsel was fully apprised that respondent's fraud investigation was still pending. If petitioner and his lawyer wished the pending fraud issue to be included in the settlement of tax adjustments relating to the first notice of deficiency, they had a responsibility to request that it be expressly included in the settlement, and they should not now be allowed to skirt the issue by way of res judicata or collateral estoppel.

---

[2] It is recognized that stipulated judgments and settlements impose limitations primarily on issue preclusion or collateral estoppel, not res judicata. See 18 Wright & Miller, Federal Practice and Procedure, sec. 4443 (1981). In light of the majority's conclusion, however, that respondent's second notice of deficiency is valid and that the petition filed herein with respect thereto gives rise to a viable action over which we have subject-matter jurisdiction, I believe that the petition filed by petitioner constitutes a new cause of action, that res judicata therefore is not the relevant rule to consider, and that collateral estoppel, not res judicata, is the theory on which the majority opinion is grounded.

Allegations, suspicions, and investigations of civil tax fraud, all of which presumably were contained in respondent's criminal investigation file pertaining to petitioner's 1979 tax return, are a "far cry" from admissions or actual knowledge of petitioner's civil tax fraud. Such material information was in petitioner's possession at the time of the settlement negotiations but was not disclosed to respondent. The following sentiments expressed in an early Circuit Court opinion are apropos:

> Taxation is not only practical—it is vital. The obligation of good faith and fair dealing in carrying out its provisions is reciprocal and, as the government should never be overreaching or tyrannical, neither should a taxpayer be permitted to escape payment by the concealment of material facts. * * * [*O'Laughlin v. Helvering*, 81 F.2d 269, 270 (D.C. Cir. 1935), quoted in *Harbin v. Commissioner*, 40 T.C. 373, 377 (1963).]

A further situation calling for a flexible application of res judicata is where a particular statutory scheme suggests the splitting of what normally would be regarded as a single cause of action. 1B Moore's Federal Practice, par. 0.405[11] (1988); 1 Restatement, Judgments 2d, sec. 26(d) (1980).[3] As explained above, I believe that a correct reading of sections 6212(c)(1) and 6501(c)(1) and (2) indicates that Congress intended to give respondent authority to split off tax deficiencies and additions to tax that are related to fraud from non-fraud-related tax adjustments. Under the statutory scheme before us, two notices of deficiency with respect to 1 year are contemplated. Two petitions in this Court are contemplated. The natural and anticipated consequence of such multiple notices of deficiency and multiple petitions is a multiplication or splitting of what normally would be dealt with only in one lawsuit. Under the statutory scheme before us, res judicata is simply not appropriate.

In summary, I would conclude in this case as the Third Circuit did in *Hopewell Township Citizens I-95 Committee v. Volpe*, 482 F.2d 376, 380 (3d Cir. 1973)—"we do not believe that this case is 'old hat' or 'the same old

---

[3]Sec. 26(d), 1 Restatement, Judgments 2d (1980), provides as follows:

Sec. 26. Exception to the General Rule Concerning Splitting.

     *     *     *     *     *     *     *

(d) The judgment in the first action was plainly inconsistent with the fair and equitable implementation of a statutory or constitutional scheme, or it is the sense of the scheme that the plaintiff should be permitted to split his claim;

ballgame.'" I would utilize the flexibility available to courts in applying res judicata and collateral estoppel to allow respondent in this case to proceed with his fraud allegation. This result is suggested by the public interest exception to the application of res judicata and collateral estoppel, and by the settlement or nonadjudicative nature of the disposition by the parties of the tax adjustments reflected in the first notice of deficiency. This result also is suggested by the relevant statutory scheme under which a splitting is contemplated of what normally would be treated as a single cause of action.

PARKER, *J.*, agrees with this dissent.