Buch, J., dissenting: The opinion of the Court turns on the question of whether CSRS accepts rollovers, yet in that opinion a majority of the Court candidly states that “there is no specific provision in the Internal Revenue Code concerning whether a qualified trust must accept a rollover that is an indirect transfer from an IRA in order to constitute an eligible retirement plan for purposes of section 408(d)(3)”. See op. Ct. p. 228. They then go on to create such a rule. This may or may not be a good or wise rule, but that should be irrelevant. It is not our role to act as rulemaker. Indeed, on the same day the Court Conference considered this Opinion, the Court of Appeals for the D.C. Circuit made this very point: “The Tax Court is in the business of interpreting and applying the internal revenue laws, see Freytag, 501 U.S. at 891, not in the business of making those laws.” Kuretski v. Commissioner, 755 F.3d 929, 943 (D.C. Cir. 2014), aff’g T.C. Memo. 2012-262. After noting what the statute says (and does not say), we are to apply what is written. The Court of Appeals for the Eleventh Circuit (where an appeal of this case could be taken) reminded us of that earlier this year: “The ‘preeminent canon of statutory interpretation’ requires the court to ‘presume that the legislature says in a statute what it means and means in a statute what it says there.’” Packard v. Commissioner, 746 F.3d 1219, 1222 (11th Cir. 2014) (quoting Bed Rock, Ltd., LLC v. United States, 541 U.S. 176, 183 (2004)), rev’g 139 T.C. 390 (2012). Indeed, over the years circuit after circuit has had occasion to remind us of this point. See Textron, Inc. v. Commissioner, 336 F.3d 26, 32 (1st Cir. 2003) (“Statutory language ‘is the most persuasive evidence of the statutory purpose’ and should not have been avoided by the Tax Court in this case.” (quoting Woodral v. Commissioner, 112 T.C. 19, 22 (1999))), rev’g 115 T.C. 104 (2000); Estate of Swan v. Commissioner, 247 F.2d 144 (2d Cir. 1957) (reversing the Tax Court for failing to apply the plain meaning of the statute), aff’g in part, rev’g in part 24 T.C. 829 (1955); Zackim v. Commissioner, 887 F.2d 455 (3d Cir. 1989) (reversing the Tax Court for looking beyond the statute to a Senate report when the language of the statute is clear), rev’g 91 T.C. 1001 (1988); Hillman v. IRS, 263 F.3d 338, 342-343 (4th Cir. 2001) (holding that the plain meaning rule applies unless the literal application of the statute “produces an outcome that is demonstrably at odds with clearly expressed congressional intent to the contrary” or when literal application of the statute “produces an absurd result”), rev’g 114 T.C. 103 (2000); Estate of Monroe v. Commissioner, 124 F.3d 699 (5th Cir. 1997) (holding that the Tax Court incorrectly applied the law when it interpreted a statute in a way that conflicts with the statutory language), rev’g 104 T.C. 352 (1995); Limited, Inc. v. Commissioner, 286 F.3d 324, 336 (6th Cir. 2002) (“[I]t is not the Tax Court’s role to inject its own policy determinations into the plain language of statutes.”), rev’g 113 T.C. 169 (1999); De Soto Sec. Co. v. Commissioner, 235 F.2d 409, 411 (7th Cir. 1956) (“The courts can only interpret congressional acts. They cannot legislate.”), rev’g 25 T.C. 175 (1955); Estate of Farnam v. Commissioner, 583 F.3d 581 (8th Cir. 2009) (holding that when the language of the statute is plain and unambiguous, there is no need to look to policy considerations), aff’g 130 T.C. 34 (2008); Easson v. Commissioner, 294 F.2d 653, 657 (9th Cir. 1961) (reversing the Tax Court for “failing to adhere to the unambiguous language contained in the statutes in question”), rev’g 33 T.C. 963 (1960); Hawkins v. Commissioner, 86 F.3d 982, 989 (10th Cir. 1996) (holding that the Tax Court’s interpretation of the statute was “unduly narrow” and ran counter to the plain meaning of the statute), rev’g 102 T.C. 61 (1994); Matthews v. Commissioner, 907 F.2d 1173, 1179 (D.C. Cir. 1990) (holding that the language of the statute is “too plain to be mistaken”), aff’g 92 T.C. 351 (1989). And the Supreme Court has reminded us. Badaracco v. Commissioner, 464 U.S. 386, 398 (1984) (affirming the Court of Appeals for the Third Circuit’s reversal of the Tax Court and stating that “[cjourts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement”), aff’g 693 F.2d 298 (3d Cir. 1982). We have acknowledged this point, as well. See Belk v. Commissioner, 140 T.C. 1, 10 (2013) (“When the plain language of the statute is clear and unambiguous, that is where the inquiry should end.”). We often make this point in apologetic tones when denying a taxpayer a tax benefit not clearly contemplated by the Internal Revenue Code. See, e.g., Eichelburg v. Commissioner, T.C. Memo. 2013-269 at *7 — *8 (“We acknowledge that the result we reach may seem harsh. * * * However, this Court may not rely on general equitable principles to expand the statutorily prescribed time for filing a petition.” (Citations omitted.)); Cutler v. Commissioner, T.C. Memo. 2013-119, at *34 (“While we sympathize with her children, we must apply the law as written; it is up to Congress to address questions of fairness and to make improvements to the law.”); Moody v. Commissioner, T.C. Memo. 2012-268, at *8 (“We are sympathetic to petitioner’s plight; however, we are bound by the statute as written and the accompanying regulations when consistent therewith.”); Ball v. Commissioner, T.C. Memo. 1995-520, slip op. at 13 (“While the result to petitioner may seem harsh, we cannot ignore the plain language of the statute and, in effect, rewrite the statute to achieve what might be an equitable result.”). So with that, I would look to the law as written and apply it to the material facts, which are fairly straightforward. Mr. Bohner worked for the Social Security Administration and participated in the CSRS during his years of service. After Mr. Bohner retired, he received a letter from OPM explaining that he could increase his CSRS retirement annuity by remitting $17,832 to make up for years when he did not have retirement contributions withheld. The letter required the amount to be paid within 15 days. The letter was silent as to whether that payment could be made through an indirect rollover.[1] During 2010 Mr. Bohner maintained an IRA with Fidelity Investments. Mr. Bohner made two requests for distributions from his IRA. Here, the chronology becomes important. Fidelity made a first distribution of $5,000 on April 15, 2010, withholding $500 of Federal income tax. Mr. Bohner then borrowed money from a friend and mailed a check for the full $17,832 to OPM for payment into CSRS on April 27, 2010. Fidelity then made a second distribution of $12,832 on May 3, 2010. Mr. Bohner used these funds to reimburse his friend and replenish his bank account. The question for us to decide under the arguments properly preserved by the parties is whether Mr. Bohner made valid rollovers.[2] The relevant statute is section 408(d). To begin, an IRA distribution is taxable as provided under section 72. Sec. 408(d)(1). However, that distribution is not taxable if it is a rollover. Sec. 408(d)(3)(A). That section sets forth the requirements of a rollover as follows: Paragraph (1) [providing that distributions are taxable] does not apply to any amount paid or distributed out of an individual retirement account or individual retirement annuity to the individual for whose benefit the account or annuity is maintained if— (ii) the entire amount received (including money and any other property) is paid into an eligible retirement plan for the benefit of such individual not later than the 60th day after the date on which the payment or distribution is received, except that the maximum amount which may be paid into such plan may not exceed the portion of the amount received which is includible in gross income (determined without regard to this paragraph). CSRS is an “eligible retirement plan”. Through a series of cross-references, a qualified trust is an eligible retirement plan. See secs. 408(d)(3) (flush language), 402(c)(8)(B). In Rev. Rul. 58-472, 1958-2 C.B. 30, the IRS held that CSRS, which was first created by the Civil Service Retirement Act of 1920, Pub. L. No. 66-215, 41 Stat. 614, is a qualified trust under section 401(a). Although revenue rulings are not binding on the Court, they may serve to bind the Commissioner where a longstanding revenue ruling that has not been modified or revoked is relevant to the case before us. Rauenhorst v. Commissioner, 119 T.C. 157, 173 (2002). The IRS has not revoked this revenue ruling, and respondent did not challenge CSRS’ status as a qualified trust here. Accordingly, CSRS is a qualified trust and therefore an eligible retirement plan. So we must see whether either of the two distributions qualifies as a rollover. The opinion of the Court denies rollover treatment for both distributions in one fell swoop. Like the facts, the law is fairly straightforward. The requirements for a distribution to be treated as a rollover are found in section 408(d)(3)(A)(ii). A distribution from an IRA will not be included in gross income if the entire amount received from the IRA is paid into an eligible retirement plan no later than 60 days after the date the payment is received. Mr. Bohner received the first distribution on April 15, 2010. Twelve days later, Mr. Bohner wrote a check exceeding the amount of the distribution to OPM for payment into CSRS. Accordingly, he fulfilled all of the requirements for a rollover contribution under section 408(d)(3)(A)(ii), and the first distribution should not be included in his gross income. The opinion of the Court makes it abundantly clear that there is no rule that overrides the rollover treatment allowed under section 408. The opinion cites section 401(a)(31), which relates to the qualification of a plan, not the tax treatment of a rollover.[3] The opinion cites section 402, which relates to rollovers from exempt trusts, not rollovers from IRAs. In fact, the opinion does not cite any specific provision in section 402 but rather cites the legislative history of 1992 amendments to section 402. In looking to analogous provisions to assist in interpreting section 408, the opinion of the Court has done the exact opposite of what canons of statutory construction instruct. Canons of statutory construction encourage courts to look to analogous provisions when resolving ambiguity in the provision under consideration. Atl. Cleaners & Dyers, Inc. v. United States, 286 U.S. 427, 433 (1932) (“Undoubtedly, there is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning.”). Where one provision contains a specific rule and another is silent, canons of statutory construction tell us that the omission is intentional. Rand v. Commissioner, 141 T.C. 376, 390-391 (2013). And we should interpret the provision consistent with the omission; we do not add a rule to the statute that Congress did not itself include. The strongest statutory authority the opinion of the Court can muster is the statement “[t]he statutory provisions governing CSRS do not include a provision allowing pretax employee contributions.” See op. Ct. p. 226. But the statutory framework of CSRS also does not include a provision prohibiting pretax employee contributions. A review of that statutory framework reveals that it is silent on the subject of its Federal income tax treatment. 5 U.S.C. secs. 8331-8351 (2006). The only tax-related provisions within CSRS’s governing statutes relate to State taxes and withholding. Id. sec. 8345(k). The provisions governing the tax treatment of CSRS distributions and rollovers into the CSRS are (unsurprisingly) found in title 26, the Internal Revenue Code. Section 408(d)(3) governs rollovers from an IRA. That provision tells us that a rollover distribution is to be treated as income on the contract when contributed to the new plan. Sec. 408(d)(3)(H)(ii)(II). If treated properly, that amount would be taxable when paid out by CSRS. Sec. 72(b) (because it is not treated as an investment in the contract, it is not part of the amount that is excluded from income). The opinion of the Court seems intent on solving a problem that does not exist. The statutory scheme places no weight on whether CSRS has a practice of accepting rollover contributions. Indeed, the statute places no weight on a plan’s preferences regarding accepting rollovers when determining the taxability of a rollover distribution. The Internal Revenue Code, however, would tax that rollover when it comes out of CSRS. If CSRS does not properly account for that (a fact that is not in the record), then that is a problem for those who administer CSRS to resolve, not the Court. The concurring opinion cites Dabney v. Commissioner, T.C. Memo. 2014—108, for the proposition that the trustee or custodian of a plan can restrict the types of investments the plan will allow, even when the statute would otherwise permit the investment. See concurring op. p. 231. Dabney is inapposite because the question presented to the Court was whether the distribution at issue was either an investment by Mr. Dabney’s IRA or a transfer between IRA trustees. Mr. Dabney did not intend or attempt to make a rollover contribution under section 408(d)(3) from one retirement account to another; rather, Mr. Dabney attempted to change the investments within his IRA in violation of the trustee’s internal policies. Mr. Dabney claimed that he acquired an investment in real property as agent for the IRA trustee; however, he could not act as agent for the trustee where the trustee had a policy against investing in real property. Our approval of the IRA trustee’s right to restrict the investment of IRA funds is not authority for the proposition that an otherwise qualified recipient of an IRA rollover contribution may, through its internal policies, cause the contribution not to qualify as such. Thus the analysis in Dabney has no bearing on the case before us. On the basis of the foregoing, the first distribution fulfills the necessary requirements for a rollover contribution. As for the second of the two Fidelity distributions, that distribution may fail to qualify as a rollover for reasons not addressed here. Because Mr. Bohner complied with all the necessary steps to make a rollover contribution as to the first distribution, I dissent. Halpern, Foley, Holmes, Gustafson, and Morrison, JJ., agree with this dissent. Such a statement would not affect the outcome the opinion of the Court reaches, and whether any such statement would affect the outcome under the analysis in this dissent is not an issue before us. See op. Ct. p. 228 and note 2. Both the opinion of the Court and respondent cite a regulation for the proposition that eligible retirement plans are not required to accept rollovers. Sec. 1.401(a)(31)-l, Q&A-13, Income Tax Regs. The regulation is irrelevant because it not only addresses the qualification requirements for a plan (an issue not before us); it also relates to accepting direct rollovers, which are not at issue here.