T.C. Memo. 2009-213


UNITED STATES TAX COURT


LESLIE FREEMAN, JR., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 12761-08, 12793-08.    Filed September 16, 2009.


In 1999 and 2000 P worked as a courier for an auto
parts delivery business.  Each workday, P drove his own
vehicle from a warehouse to several customers in a loop
through Maryland and Delaware, dropping off auto parts
and picking up cash and returned auto parts to deliver
back to the warehouse.  P drove from the location of
his last customer to his home in the evening and then
drove from his home to the warehouse in the morning to
deliver the cash and returned auto parts he had
collected the previous day.  At trial P alleged for the
first time that his wife also worked as a courier for
the auto parts delivery business and earned some of the
income he reported as his own.

<u>Held</u>:  P is entitled to deduct his mileage
incurred in connection with the auto parts delivery
business, except for mileage added by his commute to
and from his home.

    **Held**, **further**, P is not entitled to exclude his wife's alleged income from the auto parts delivery business or deduct her alleged mileage incurred in connection with that business.


T. Keith Fogg, for petitioner.

Gary J. Merken, Keith L. Gorman, and Kelly Anne Hicks, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

GUSTAFSON, Judge:  The Internal Revenue Service (IRS) issued to petitioner, Leslie Freeman, Jr., two statutory notices of deficiency on February 21, 2008, pursuant to section 6212,[1] showing determinations of the following deficiencies in income tax and accompanying failure-to-file additions to tax under section 6651(a)(1) for tax years 1999 and 2000:

| Tax Year | Deficiency | Addition to Tax Sec. 6651(a)(1) |
|----------|------------|---------------------------------|
| 1999 | $16,058 | $4,014.50 |
| 2000 | 8,514 | 2,128.50 |

---

[1]Unless otherwise indicated, all citations of sections refer to the Internal Revenue Code of 1986 (26 U.S.C.), as amended, and all citations of Rules refer to the Tax Court Rules of Practice and Procedure.

After concessions,[2] the issues for decision are whether Mr. Freeman is entitled to (i) a deduction under section 162 for his mileage between his personal residence and job locations, and (ii) either an exclusion of his wife's alleged portion of the delivery business income or a deduction for his wife's alleged business mileage. We find that Mr. Freeman is entitled to a deduction for his mileage, except for the mileage added by his commute to and from his residence. We also find that Mr. Freeman is not entitled to an exclusion for his wife's alleged income or a deduction for her alleged business mileage.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts filed February 23, 2009, and the attached exhibits are incorporated herein by this reference. Trial of this case was held in Philadelphia, Pennsylvania, on February 23, 2009. Mr. Freeman was the only witness who testified. At the time that Mr. Freeman filed his petition, he resided in Delaware.

---

[2]Mr. Freeman concedes that to the extent he is required to show tax on his Form 1040, U.S. Individual Income Tax Return, for either or both of the tax years at issue, he is liable for the failure-to-file addition to tax under section 6651(a)(1).

Mr. Freeman's Residence and Job at PDX

During tax years 1999 and 2000, Mr. Freeman resided with his wife, Cheryl Freeman,[3] in a house in Lincoln, Delaware, and worked as a courier for Parts Distribution Xpress, Inc. (PDX), an auto parts delivery company. Mr. Freeman's job as a courier involved picking up auto parts at PDX's warehouse in Baltimore, Maryland, and delivering those parts to 15 or more of PDX's customers on a route that went through several cities in Maryland and Delaware. Mr. Freeman also collected cash and returned auto parts from PDX's customers at each stop along his route. Following the last stop on his route, Mr. Freeman returned to his residence in Lincoln, Delaware, without going back to PDX's warehouse in Baltimore. After he arrived home, he filled out invoices. The following day he delivered the previous day's invoices, cash, and returned auto parts to the warehouse in Baltimore, where he picked up the next shipment of auto parts and repeated his route. Mr. Freeman made these deliveries for PDX 5 days each week, 50 weeks each year, during the tax years at

---

[3]Mr. Freeman is still married to Cheryl Freeman. However, he separated from Mrs. Freeman after their house in Lincoln, Delaware, was destroyed by an accidental fire on November 13, 2004. She did not testify at trial.

issue.[4]  He used his own vehicles to make these deliveries and was not reimbursed by PDX for his mileage.[5]

Mr. Freeman's Delivery Route[6]

During tax years 1999 and 2000, Mr. Freeman's delivery route took the form of a loop through Delaware and Maryland, with 15 or more stops at automobile dealers and repair shops.  Mr. Freeman started his delivery route at 5 a.m. each workday by driving 98 miles west and north from his house in Lincoln, Delaware, to PDX's warehouse in Baltimore, Maryland.  (At mile 12 on that 98-mile route, he passed through Harrington, Delaware, which would later be the last stop on his delivery route.)  When Mr. Freeman arrived at the Baltimore warehouse, he dropped off the invoices, cash, and returned auto parts that he had collected from customers the day before, picked up the next shipment of auto

---

[4]Mr. Freeman alleged that he worked as a courier for PDX 5 days for every week of the year, except "Christmas and Easter" or when he was "gravely sick".  Thus, we find that the record shows that Mr. Freeman did take some workdays off, and that he worked 5 days each week for only 50 weeks each year, for a total of 250 workdays in each of 1999 and 2000.

[5]Mr. Freeman credibly testified that he purchased and used three vehicles for his work as a courier for PDX (of which he used one at any given time) and that he was not reimbursed for the purchase or use of his vehicles.

[6]The distances given in this opinion were not proved at trial, but we take judicial notice of them pursuant to Fed. R. Evid. 201(b).  Mr. Freeman testified that traffic or other considerations sometimes caused him to take alternate routes; but he did not substantiate these alternates, and in this opinion we assume the shortest distances between the cities on his route.

parts, and drove 58 miles northeast from Baltimore to Elkton, Maryland, then 36 miles southward to Chestertown, Maryland, then 36 miles eastward to Dover, Delaware, then 18 miles southward to Harrington, Delaware. Along each of these legs of his route, Mr. Freeman left the highway to make stops at various locations, but he did not testify about the particular locations. As a result, the record shows only the main cities along his route, between which the mileages are as follows:

| | |
|---|---|
| Baltimore to Elkton | 58 |
| Elkton to Chestertown | 36 |
| Chestertown to Dover | 36 |
| Dover to Harrington | 18 |
| Total | 148 |

The total minimum for this route from warehouse to last stop was therefore 148 miles. Mr. Freeman apparently drove more than 148 miles to make his individual stops; but as we explain below, he did not substantiate the greater number of miles he actually drove on this route.

After his last stop in Harrington, Mr. Freeman drove 12 miles east to his house in Lincoln, Delaware. Thus, he drove a total of no less than 258 miles each workday (i.e., 98 miles to the warehouse, plus a minimum of 148 miles on his route, plus 12 miles to his house). It should be noted that if Mr. Freeman had driven directly from his last delivery stop in Harrington, Delaware, back to PDX's warehouse in Baltimore, Maryland--a trip of 86 miles--rather than first driving the 12 miles to his house

in Lincoln plus the 12 miles back to Harrington--then he would have driven a total of 234 miles each work day, rather than the 258 miles he actually drove. His drive to his house and back therefore constituted a 24-mile side trip from the route he otherwise would have driven; but 234 miles of his daily circuit were the same miles that he would have driven (and on the same highways on which he would have driven them) if he had never veered from his delivery route.

Mr. Freeman's Forms 1099

During tax years 1999 and 2000, Mr. Freeman was an independent contractor with respect to PDX. PDX paid Mr. Freeman weekly with bank checks. PDX issued to Mr. Freeman (in his sole name) Forms 1099-MISC, Miscellaneous Income, which showed non-employee compensation of $52,904 for 1999 and $35,986 for 2000.

Mr. Freeman's Substantiation of His Expenses

Mr. Freeman testified that during his work with PDX in 1999 and 2000, he drove the delivery route described above each workday. Mr. Freeman kept a daily log of that delivery route, in part because he needed to verify his auto part deliveries to PDX and its customers:

> You almost had to keep a log, and especially when you took a part and a customer said that you didn't bring it, you could say, yes, I did, and you would keep the amount that the part was so that you could have our tax record. You would also keep your mileage in your logs so that you could refer to them.

Mr. Freeman kept this log by recording daily his vehicles' odometer readings and his stops in a spiral-bound logbook, the pages of which were formatted to include dates and spaces for different entries. However, Mr. Freeman did not present this logbook, or any other log, calendar, diary, work or leave record, or written record to corroborate his testimony.

Destruction of Mr. Freeman's House and Records

On November 13, 2004, Mr. Freeman's house in Lincoln, Delaware, in which he had resided with his wife during the tax years at issue, was destroyed by an accidental fire. The fire was caused by water leakage that short circuited Mr. Freeman's clothes dryer. This fire and its cause were both confirmed by a "Statement of Verification" issued by the Office of the State Fire Marshal of the State of Delaware on January 2, 2008.

Mr. Freeman credibly testified that he kept his PDX logbook in his house in Lincoln, Delaware, and that the logbook was destroyed along with his house in the 2004 fire.

Mr. Freeman's Forms 1040 and the IRS's Notices of Deficiency

Mr. Freeman did not timely file his Forms 1040 for 1999 and 2000. However, Mr. Freeman had begun to self-prepare his Forms 1040 for 1999 and 2000 before the occurrence of the 2004 fire that destroyed the daily log of his mileage for PDX along with his house. Mr. Freeman used entries from his daily log to

calculate his business mileage for PDX for purposes of filling out the drafts of his Forms 1040 for 1999 and 2000.

Mr. Freeman kept those drafts in a small briefcase, which he used to transport the drafts to and from a library where he worked on them. On the day of the 2004 fire, that briefcase and the partially completed Forms 1040 were behind the seat of one of Mr. Freeman's vehicles and therefore were not destroyed. After the 2004 fire Mr. Freeman discovered the partially completed Forms 1040 with the business mileage for PDX already listed on Schedule C, Profit or Loss From Business. He completed and filed those forms using the status of married filing separately on October 27, 2006.

On the 1999 Form 1040, Mr. Freeman claimed a deduction of $57,900 on Schedule C under the heading "Car and truck expenses". He claimed $48,700[7] on the Form 1040 for 2000. Mr. Freeman calculated these claimed deductions by multiplying 30 cents[8] per

---

[7]Mr. Freeman acknowledges that he miscalculated the amount shown on Schedule C of the 2000 Form 1040, i.e., 30 cents multiplied by 129,000 equals $38,700, not $48,700 as claimed.

[8]Section 1.274-5(g)(1), Income Tax Regs., provides that the Commissioner may prescribe (in pronouncements of general applicability) a standard mileage rate that a taxpayer may use to determine a deduction with respect to the business use of a passenger automobile. This rate is set forth in a revenue procedure published by the IRS each year. For 1999 the rate was 32.5 cents per mile from January 1 through March 31 and 31 cents per mile for the remainder of the year. Rev. Proc. 98-63, sec. 2.01, 1998-2 C.B. 818, 818; Announcement 99-7, 1999-1 C.B. 306.

(continued...)

mile by the 193,000 business miles he reported on the Schedule C for 1999 and the 129,000 business miles he reported for 2000.[9]

In the two notices of deficiency dated February 21, 2008, the IRS disallowed Mr. Freeman's claimed deductions for car and truck expenses and determined the resulting deficiencies.

OPINION

At issue is Mr. Freeman's entitlement to deductions for job-related expenses.  Section 162(a) allows a deduction for all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business.  Section 262, however, provides that no deduction is allowed for personal, living, or family expenses.  Deductions are strictly a matter of legislative grace, and taxpayers must satisfy the specific requirements for any deduction claimed.  See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  Furthermore, taxpayers are required to maintain records sufficient to substantiate their

---

[8](...continued)
For 2000 the rate was 32.5 cents per mile.  Rev. Proc. 99-38, sec. 2.01, 1999-2 C.B. 525, 525.  Mr. Freeman rounded the standard mileage rate down to 30 cents for both 1999 and 2000. Mr. Freeman alleged that he did so in order to simplify the calculations on his Forms 1040.

[9]Mr. Freeman alleged that he arrived at these numbers by adding his own business mileage for PDX to his wife's alleged business mileage for PDX, discussed below, and rounding up or down to the nearest thousand miles.

claimed deductions.  See sec. 6001; sec. 1.6001-1(a), Income Tax
Regs. (26 C.F.R.).

I.   Mr. Freeman's Vehicle Expenses

     A.   Personal Commuting Versus Business Travel

     Mr. Freeman contends that he is entitled to deduct the
standard mileage rate for the miles he drove on his delivery
route for PDX between his residence in Lincoln, Delaware, and his
job locations in Delaware and Maryland.[10]  In general, the cost
of daily commuting to and from work is a nondeductible personal
expense.  See Commissioner v. Flowers, 326 U.S. 465, 473-474
(1946); sec. 1.162-2(e), Income Tax Regs.  However, "[c]ertain
types of business-related travel have been found to be
deductible", including "local travel incurred while performing a
job, Lopkoff v. Commissioner, T.C. Memo. 1982-701; [and] travel
between jobs or job locations, Fausner v. Commissioner, 55 T.C.
620 (1971)".  Pollei v. Commissioner, 87 T.C. 869, 872 (1986),
revd. on another issue 877 F.2d 838 (10th Cir. 1989).  In order

---

[10]At trial Mr. Freeman also contended for the first time
that he is entitled to deduct the tolls he allegedly paid on his
delivery route.  However, Mr. Freeman did not claim deductions
for tolls on his 1999 and 2000 Forms 1040, nor did he place
deductions for tolls in issue in his petition.  Therefore, we
need not consider this contention.  See Lewis v. Commissioner, 90
T.C. 1044, 1053-1054 (1988).  Moreover, Mr. Freeman does not
allege, nor does the record show, that he ever kept any records
or otherwise kept track of the tolls he allegedly paid on his
delivery route.  Therefore, even if the issue of deductions for
tolls were properly before this Court, Mr. Freeman has failed to
substantiate those expenses.

to prevail, Mr. Freeman must prove that his mileage arises from deductible business-related travel rather than nondeductible commuting.

"Unreimbursable transportation expenses incurred between two places of business are deductible." Gilliam v. Commissioner, T.C. Memo. 1986-90 (citing Steinhort v. Commissioner, 335 F.2d 496, 503-505 (5th Cir. 1964), affg. and remanding T.C. Memo. 1962-233); see also Pollei v. Commissioner, supra at 872; Fausner v. Commissioner, 55 T.C. 620 (1971).

However, as is noted above, the cost of daily commuting to and from work is a nondeductible personal expense. See Commissioner v. Flowers, supra at 473-474; sec. 1.162-2(e), Income Tax Regs. Respondent characterizes Mr. Freeman's 12-mile drive from the Harrington delivery stop to his house and the 98-mile drive from his house to the Baltimore warehouse as personal commutes and therefore as nondeductible. Evaluating this characterization requires attention to the purpose and occasion of the miles driven.

In Lopkoff v. Commissioner, T.C. Memo. 1982-701, we observed that "[i]f traveling between two businesses is an allowable section 162(a) deduction, traveling within a business is most assuredly so." In Lopkoff, the taxpayer worked at a hospital as an administrative employee and also ran her own x-ray delivery business on the side. In that case, the taxpayer picked up x-

rays at the end of her workday at the same hospital where she worked, and then drove 27 miles to deliver them to a medical center for interpretation by a radiologist. Afterward, she drove one-half mile from the medical center to her personal residence. The next morning, the taxpayer would drive one-half mile from her personal residence to the medical center to pick up the x-rays she had delivered the previous day. The taxpayer then drove 27 miles to deliver the interpreted x-rays to the hospital, where she began her workday as an administrative employee. In Lopkoff, we held that the taxpayer's nondeductible "commute was from her home to where she began the first of her trades or businesses," i.e., the half mile from her personal residence to the medical center, where she began to travel within her x-ray delivery business. A "[delivery] business is the travel itself." Id. Therefore, any transportation expense incurred in a delivery business is travel within a business, and "is most assuredly" deductible. Id.

B.   Analysis of Mr. Freeman's Mileage

Mr. Freeman worked as a courier for PDX, and thus there is no dispute that he was engaged in a delivery business during the tax years at issue. Any transportation expense that Mr. Freeman incurred within that business "is most assuredly" deductible to the extent that he substantiates it. Id. Therefore, the pivotal question is whether the mileage reported on Mr. Freeman's 1999

and 2000 Forms 1040 was incurred in connection with his auto parts delivery business or his personal commute from his house to work.

### 1. Mileage Between PDX's Warehouse and Mr. Freeman's Stops on His Delivery Route

PDX's warehouse and the stops on Mr. Freeman's delivery route in Maryland and Delaware are indisputably places of business for Mr. Freeman. Respondent does not allege that Mr. Freeman's mileage between these locations was incurred in connection with his personal commute. It is clear that such mileage (at least 148 miles per workday) arose from travel between two job locations, discussed above, and travel within a business, and is deductible under either rationale if substantiated. Therefore, Mr. Freeman is entitled to a deduction for his substantiated mileage between those job locations (i.e., the 148 miles from Baltimore to Harrington).

### 2. Mileage To and From Mr. Freeman's House

In his brief, respondent contends that even if Mr. Freeman substantiates his mileage in the tax years at issue, his mileage "between home and the PDX warehouse and between the last stop of the day and home represents commuting for which no deduction is available." Respondent points out that on these legs of the trip to and from his house, Mr. Freeman made no stops for any customers; and respondent contends that Mr. Freeman's mileage on

those legs therefore represents personal commuting.  However, as to most of the pertinent miles, this last contention contradicts the facts.  Unlike the taxpayer in Lopkoff v. Commissioner, supra, who always dropped off the x-rays before her one-half-mile commute to and from her personal residence, Mr. Freeman was required to deliver from Harrington (his last stop) to the Baltimore warehouse the invoices, cash, and returned auto parts that he had collected along his delivery route.  Thus, any mileage arising from this Harrington-to-Baltimore delivery was incurred in connection with Mr. Freeman's auto parts delivery business, and its costs are deductible if substantiated.

However, PDX did not require Mr. Freeman to live 12 miles off his route in Lincoln, Delaware.  Rather, Mr. Freeman must have had other reasons, sufficient to him, for living there.  He is certainly free to live there and free to work wherever he pleases, but his reasons for living in Lincoln were personal in nature and unrelated to his job at PDX.  Cf. Tucker v. Commissioner, 55 T.C. 783, 785-788 (1971).  Mr. Freeman transported the invoices, cash, and returned auto parts in his vehicle when he drove in the evening from his last stop of the day in Harrington to his house in Lincoln, and when he drove the next morning from his house in Lincoln, through Harrington, and on to PDX's warehouse in Baltimore.  Since Mr. Freeman was required to return the cash and parts to Baltimore, but was not

required to do so via a side trip to and from his house, the mileage he incurred in connection with that route arose from both business-related and personal travel. Thus, Mr. Freeman's mileage from that route arose from travel within a business (and is therefore deductible) only to the extent that it did not exceed the distance of the trip that PDX required him to make, i.e., the distance between his last stop of the day and PDX's warehouse. See Pollei v. Commissioner, 87 T.C. at 872; Lopkoff v. Commissioner, T.C. Memo. 1982-701. Any excess mileage is nondeductible commuting that is attributable to Mr. Freeman's personal choice to live in Lincoln, Delaware. Therefore, Mr. Freeman is entitled to deduct--if substantiated--the costs of 234 miles per workday, which represents (i) the 148 miles between PDX's warehouse and the stops on his delivery route in Maryland and Delaware; and (ii) the 86 miles between his last stop of the day in Harrington, Delaware, and PDX's warehouse. The additional 24 miles, which he drove from his last stop to home and back, constituted nondeductible commuting that arose from his personal choice to live off his route in Lincoln, Delaware.

C. Substantiation

Respondent contends that Mr. Freeman's claimed deductions under section 162 for car and truck expenses of $57,900 for 1999 and $48,700 for 2000 must be disallowed for the additional reason

that he has not substantiated the mileage he claims to have driven in connection with his auto parts delivery business.

In addition, section 274(d) imposes stringent substantiation requirements for claimed deductions relating to the use of "listed property", which is defined under section 280F(d)(4)(A)(i) to include passenger automobiles.  Under this provision any deduction claimed with respect to the use of a passenger automobile, like Mr. Freeman's vehicles, will be disallowed unless the taxpayer substantiates specified elements of the use by adequate records or by sufficient evidence corroborating the taxpayer's own statement.  See sec. 274(d); sec. 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

The elements that must be substantiated to deduct the business use of an automobile are:  (i) the amount of the expenditure; (ii) the mileage for each business use of the automobile and the total mileage for all uses of the automobile during the taxable period; (iii) the date of the business use; and (iv) the business purpose of the use of the automobile.  See sec. 1.274-5T(b)(6), Temporary Income Tax Regs., supra.

In lieu of substantiating the actual amount of an expenditure relating to the business use of a passenger automobile, a taxpayer may use a standard mileage rate

established by the Internal Revenue Service.[11]  See

sec. 1.274-5(j)(2), Income Tax Regs.  Use of the standard mileage

rate establishes the amount deemed expended with respect to the

business use of a passenger automobile, but such use does not

relieve a taxpayer of his burden of substantiating the other

elements required by section 274 and the regulations thereunder.

Sec. 1.274-5(j)(2), Income Tax Regs.

Mr. Freeman kept a daily log for his auto parts delivery

business in a spiral-bound logbook that would have provided the

required information.  However, Mr. Freeman testified--and

provided a "Statement of Verification" from the Office of the

State Fire Marshal of the State of Delaware to prove--that his

house was destroyed, along with its contents, including his

logbook, in an accidental fire.  "It is well established that the

Tax Court may permit a taxpayer to substantiate deductions

through secondary evidence where the underlying documents have

---

[11]As respondent notes, the so-called fleet rule may prohibit the use of the standard mileage rate in the tax years at issue to compute the deductible expenses of two or more automobiles used simultaneously.  Rev. Proc. 98-63, sec. 5.06, 1998-2 C.B. at 820; Rev. Proc. 99-38, sec. 5.06, 1999-2 C.B. at 527; see also West v. Commissioner, 63 T.C. 252, 254-255 (1974).  Mr. Freeman makes several arguments for the inapplicability of the fleet rule here. However, as is discussed below, we do not accept Mr. Freeman's unsupported testimony that his wife or others also simultaneously drove additional miles in connection with his auto parts delivery business; we allow a deduction for only one driving of the delivery route--by one vehicle--each day.  Consequently, the fleet rule is not applicable to this case and Mr. Freeman may use the standard mileage rate.

been unintentionally lost or destroyed." Davis v. Commissioner, T.C. Memo. 2006-272 (citing Boyd v. Commissioner, 122 T.C. 305, 320-321 (2004), Malinowski v. Commissioner, 71 T.C. 1120, 1125 (1979), Furnish v. Commissioner, T.C. Memo. 2001-286, Joseph v. Commissioner, T.C. Memo. 1997-447, Watson v. Commissioner, T.C. Memo. 1988-29). Moreover, even though Congress imposed stringent substantiation requirements for some business deductions by enacting section 274, the regulations under that section allow a taxpayer to "substantiate a deduction by reasonable reconstruction of his expenditures or use" when records are lost through circumstances beyond the taxpayer's control, including a fire. Sec. 1.274-5T(c)(5), Temporary Income Tax Regs., supra. If documentation is unavailable, we may accept the taxpayer's credible testimony to substantiate the deduction. See Boyd v. Commissioner, supra at 320; Watson v. Commissioner, supra.

Having observed Mr. Freeman's appearance and demeanor at trial, we find him to be credible with respect to the route he drove in connection with his auto parts delivery business. We find that Mr. Freeman at one time possessed adequate documentation, in the form of a daily log, to establish the required elements under section 274(d) for deducting his business mileage. His failure to produce that daily log stemmed from circumstances beyond his control--namely, the accidental fire that destroyed his house and the logbook. Although he did not

testify about the details of the locations of each stop along his route, Mr. Freeman did provide through his testimony a reasonable reconstruction of his general route.  We therefore hold that Mr. Freeman kept adequate records to substantiate his business mileage for tax years 1999 and 2000, to the extent of 234 miles per day.

II.  <u>Mr. Freeman Is Not Entitled to Exclude His Wife's Alleged Income From PDX Or Deduct Her Alleged Business Mileage Incurred In Connection With PDX</u>

At trial Mr. Freeman contended for the first time that his wife also worked as a courier for PDX, and that half of the income and business mileage shown on his 1999 and 2000 Forms 1040 is attributable to her.  Mr. Freeman explained that his wife was contractually obligated to refrain from working for PDX, under a covenant not to compete that she had entered into with a previous employer.  To evade this contractual obligation, PDX allegedly agreed to pay Mr. Freeman for Mrs. Freeman's deliveries and to issue one Form 1099 in Mr. Freeman's name only for both of the Freemans' compensation.  On the basis of these alleged facts, Mr. Freeman contends in the alternative that he is entitled either (i) to exclude his wife's income from PDX, or (ii) to deduct the costs of his wife's business mileage incurred in connection with PDX.

However, Mr. Freeman's contention lacks merit for two reasons.  First, this contention is not properly before the

Court, because Mr. Freeman failed to raise in his petition the issue of his wife's working for PDX. See Lewis v. Commissioner, 90 T.C. 1044, 1053-1054 (1988). Second, even if this issue were properly before the Court, Mr. Freeman failed to prove that portions of the income from PDX shown on his 1999 and 2000 Forms 1040 are the income of his wife (as opposed to income properly his, even if paid by PDX for work done by his wife as his agent or employee). Neither Mrs. Freeman nor any personnel from PDX attended the trial or testified. Thus, the only evidence that Mrs. Freeman worked independently for PDX, earned her own income from PDX, or incurred business mileage expenses in connection with PDX is Mr. Freeman's unsupported testimony. Moreover, this testimony is contradicted by Mr. Freeman's 1999 and 2000 Forms 1040, and the Forms 1099-MISC issued to Mr. Freeman by PDX, which all identify the income from PDX as his and his alone. Mr. Freeman made no showing that his wife reported this income on tax returns of her own. On the record before us, we cannot find that any portion of the income from PDX is attributable to Mrs. Freeman, or that she incurred any additional business mileage expenses in connection with PDX for which Mr. Freeman might be entitled to a deduction. Accordingly, Mr. Freeman is not entitled to exclude his wife's alleged income from PDX nor to deduct any additional business mileage expenses allegedly incurred by her in connection with PDX.

Therefore, we hold that Mr. Freeman is entitled to deductions under section 162 for 234 miles for each of his 250 workdays (i.e., 58,250 miles) in both 1999 and 2000 using the applicable standard mileage rates.  We also hold that Mr. Freeman is not entitled to exclude the portions of his income allegedly attributable to his wife nor to deduct her alleged additional mileage expenses incurred in connection with PDX deliveries.

To reflect the foregoing,

<u>Decisions will be entered under Rule 155</u>.